# WILLIAM T. WALLACE *v.* THE MAYOR AND COMMON COUNCIL OF THE CITY OF SAN JOSE.

POWER OF MAYOR AND COMMON COUNCIL OF SAN JOSÉ TO SUE.—The Mayor and Common Council of the City of San José can sue in the corporate name for the recovery of such real property as belongs to the city.

POWER OF MAYOR AND COMMON COUNCIL OF SAN JOSÉ TO CONTRACT.—The Mayor and Common Council of the City of San'José have no power to enter into a contract by which the city becomes obligated to pay an attorney at a future time a sum of money, if he succeeds in placing the city in possession of certain real estate, unless there is money in the Treasury at the time to pay the same, after paying the expenses of the city government and all other demands legally due.

CONTRACT BY SAN JOSÉ CREATING DEBT TO ARISE IN FUTURE.—The Mayor and Common Council of San José have no authority to bind the city by the creation of a debt to arise in future, unless there is money in the Treasury at the time to pay the same, after paying the expenses of the government and all other demands legally due.

CONTRACT OF MUNICIPAL CORPORATION.—A municipal corporation is not bound by a contract made by its officers, unless the Act of incorporation delegated the power to make it.

CONTRACTING WITH MUNICIPAL CORPORATION.—Those who contract with a municipal corporation are bound to know the extent of the power of its officers.

EVIDENCE IN SUIT AGAINST SAN JOSÉ.—In a suit against the Mayor and Common Council of the City of San José on a contract creating a debt, the defendant may prove that at the time the contract was made there was no money in the City Treasury except what had been appropriated to pay current expenses of the city government and its legal indebtedness.

APPEAL from the District Court, Third Judicial District, Santa Clara County.

The facts are stated in the opinion of the Court.

*Francis E. Spencer*, for Appellant, argued that the corporation was not bound by the contract, as it created a debt within the meaning of the twelfth section of the Act of incorporation, and cited *People* v. *Johnson*, 6 Cal. 500 ; *Nouguez* v. *Douglass*, 7 Cal. 69 ; *The People ex rel. McCullough* v *Pacheco*, 27 Cal. 175.

*William T. Wallace*, in *pro per.*, for Respondent, argued that a municipal corporation has all the incidental powers under our system which it possessed at common law, unless the Act creating it denied or limited these powers, and cited Kyd on Cor. p. 13 ; and Angell & Ames on Cor., p. 1.   He also argued that the contract in question did not create a debt, and cited *State of California* v. *McCauley*, 15 Cal. 454.   He also argued that, as the power to contract a debt was not taken away if there was money in the Treasury to meet the same, that the power to appropriate moneys afterwards to come into the Treasury was unlimited, and cited 16 Cal. 24 ; Id. 249 ; and 27 Cal. 208.

By the Court, CURREY, J.

This action was brought on a contract, under seal, purporting to have been executed on the 8th of April, 1863, by the

defendant, a municipal corporation, of the first part, and the plaintiff, an attorney and counsellor at law, of the second part.

This contract, in the first place, recites that the City of San José at that date claimed to be the owner and entitled to possession and control of certain lots and parcels of land situate within its corporate limits, which before then were devoted and dedicated by the city, through its corporate authorities, to educational purposes, and that divers persons had entered into the possession of several such lots and claimed to be the owner of them, and refused to surrender them to the city or its authorities; and that the city and its authorities desired to reduce the same parcels of land to their possession and control for educational purposes; and that to accomplish this end, the parties of the first part, the Mayor and Common Council, in behalf of the city and for themselves and their successors in office, had retained and employed the plaintiff as an attorney at law to institute and conduct such actions on behalf of the city as was or should be necessary for the recovery of the possession of such of the lots and parcels of land as might be recoverable. Then follows a covenant on the part of the plaintiff to render his services as an attorney at law faithfully and diligently, in and about the subject matter for which he was employed. The compensation which he was to have for his services, the contracting parties agreed should be fifty per cent of the cash value of each of the lots or parcels of land which should be recovered in any of the actions that might be brought. Such compensation was to be paid in the " current gold and silver coin of the country," whenever the city or its authorities should obtain the actual possession of the lot or lots of land recovered, provided the plaintiff's compensation in the aggregate should never exceed eight thousand dollars.

Soon after the date of this contract the terms of the then incumbents of the offices of Mayor and Common Council expired, and a new board of municipal officers succeeded. At a meeting of this new board of officers, held on the 4th of May, 1863, a resolution, preceded by a preamble assigning the reason for it, was passed, declaring that they, the Mayor and

Common Council, deemed the said contract " a violation of good faith, justice, law and equity, as also of the provisions of the city charter ;" and further declaring that they would not hold themselves, in their municipal capacity, bound by any of the conditions set forth in such contract.

The plaintiff brought his action, alleging in his complaint and proving on the trial that he entered upon the performance of the contract, and actually performed certain services in the investigation of the rights of the defendant to the several lots and parcels of land referred to in the agreement, after which he was served with a copy of the resolution last mentioned. He also averred that at all times after the execution of the contract until the commencement of the action he had been ready and willing to perform it, and had kept and performed it on his part, but that defendant had and still refused to perform it on its part, and refused to permit the plaintiff to institute any action or actions for the recovery of the possession of the said lots of land or any part of the same. Relying upon the matters stated as a breach of the agreement on the part of the defendant, the plaintiff alleged that he was entitled to have and receive of the defendant eight thousand dollars in gold and silver coin. By an amendment, the plaintiff added to his original complaint a count in assumpsit upon a *quantum meruit*, alleging a breach of the defendant's promise to his damage in the sum of three thousand dollars.

To both counts of which the complaint consisted, the defendant demurred on various grounds, among which are the following :

First—That the complaint does not state facts sufficient to constitute a cause of action.

Second—That it does not appear from the complaint that any legal or valid contract was entered into between the parties.

The demurrer was overruled, whereupon the defendant answered, traversing every material allegation of the complaint.

At the trial the defendant offered to prove :

First—That all the right, title and interest that the defendant ever had in the premises referred to in the contract had long before the date of it vested and yet remained in the Board of Commissioners of the Funded Debt of the City of San José, and that said premises did not belong to the defendant at the date of the contract.

Second—That when the contract was executed there were no funds or money in the Treasury of the city, or belonging to the corporation, appropriated for the recovery of the possession of said premises; also, that no appropriation in behalf of the corporation of any money belonging to the city or in its Treasury for the purpose of recovering said lots or any portion of them had been made; also, that at that time there was not, nor since then had been, any funds or money belonging to the corporation or in the Treasury of the city, which was not appropriated for the purpose of paying the current expenses of the city government and the legal indebtedness of the city which had accrued before that time.

Third—That no report was ever made or published in relation to the expenditure contemplated by the contract; and that no election had ever been called or held for the purpose of voting for or against any such proposed expenditure.

All this evidence was excluded on the ground that the same was irrelevant, and to this ruling the defendant duly excepted. The plaintiff obtained a verdict for fifteen hundred dollars, on which judgment was entered. Whereupon the defendant applied for a new trial, which was refused.

*Powers of the Common Council of San José.*

The questions presented necessarily require an examination respecting the powers of the Common Council of the City of San José, under the Act of incorporation of 1859, which was amended in some particulars not important to this case, in 1863. The only powers which the Council had at the time the contract on which the action was brought was executed, are to be found in the Act of 1859. The tenth section of the Act confers upon the officers the power to pass such ordinances

as they may deem expedient for certain specific purposes, and the next section specifies what must be done to render an ordinance valid and of legal force. The twelfth section declares that " the Common Council shall have no power to create any debt upon the credit of the city, nor to make any expenditure for improvements except as provided for in this Act, nor shall any warrant be drawn on the City Treasury, unless there shall be sufficient moneys to meet the same after paying the expenses of the government, and all other demands legally due ;" and by the fourteenth section of the Act it is provided as follows : " At each regular meeting of the Council they shall inquire into the condition of the streets, bridges, school houses, fire department, and all property belonging to the city, and if it shall appear that the interests of the city demand an expenditure of more money than there is in the Treasury appropriated for such purpose, or to recover possession of any real estate or property of said city, they shall make a report of the same, to be published in some newspaper in the city, particularly specifying the object or objects for which the expenditure is required, and the amount of money necessary to be raised by tax to meet the same, and immediately thereafter the said Council shall call an election, giving ten days' notice thereof, at which the persons who are legal voters and tax payers of said city may vote for or against a tax to meet the proposed expenditures. The voting shall be by ballot, and a majority vote shall determine if such tax shall be levied or not. The Common Council shall examine and declare the result, and if the vote is in favor of levying the tax, the Common Council shall forthwith order the tax or taxes to be levied and collected, upon the basis of the last assessment, and shall make the proposed expenditure; *provided*, that the special tax thus levied shall for no one year exceed more than one half of one per cent on the valuation of the property, as shown by the last assessment roll, and shall be levied and collected as provided by law for the levy and collection of State and county taxes;

24

*provided*, further, that no special tax for any one year shall exceed the amount of three thousand dollars."

*Power of a Common Council to bind a city by contract.*

Assuming that the resolution by authority of which the contract with the plaintiff was executed by the Mayor and Common Council was, in effect, an ordinance, and that it was passed by a competent majority, it is necessary to go further and ascertain whether even then the Mayor and Council had authority to bind the city by the contract entered into. Respecting corporations generally, the late Chancellor Kent said: "The modern doctrine is to consider corporations as having such powers as are specifically granted by the Act of incorporation, or as are necessary for the purpose of carrying into effect the powers expressly granted, and as not having any other." (2 Kent's Com. 298.) He speaks of the rule thus briefly stated as an obvious doctrine, which had been declared by the Supreme Court of the United States, and repeated in the decisions of the State Courts, and then says: "As corporations are the mere creatures of law established for special purposes, and derive all their powers from the Acts creating them, it is perfectly just and proper that they should be obliged strictly to show their authority for the business they assume, and be confined in their operations to the mode and manner, and subject matter prescribed." The reasons which are the foundation of this doctrine in respect to private corporations, apply *a fortiori* when considering the powers of municipal corporations. In *Argenti* v. *City of San Francisco*, 16 Cal. 282, the Court say: "A municipal corporation can only act in the cases and in the mode prescribed by its charter," and the same doctrine as to subject matter is inculcated in the case of *City of Oakland* v. *Carpentier*, 13 Cal. 545.

By the Act to incorporate the City of San José, passed in 1850, the corporate authorities could sue and be sued; might grant, hold and receive property, real and personal, within the city; might lease, sell and dispose of the same for the benefit of the city, and might provide for the regulation and

use of all commons belonging to the city. To all these rights, titles, interests, and possessions, liabilities and obligations, the Mayor and Common Council succeeded, under the Act passed in 1859; and therefore they possessed the capacity to sue in the corporate name for the recovery of such real property as belonged to the corporation at the time the contract in question was executed, for which purpose counsel might be employed, provided the conditions to the exercise of such power existed.

The Common Council, as we have seen, had no power to create a debt upon the credit of the city, unless there was sufficient money on hand to meet the same, after paying the expenses of the Government and all other demands legally due. Money sufficient to meet a debt to be so created, over and above enough to pay the expenses of the city government and all other demands legally due, was a condition precedent to the power of the Council to create a debt which should be binding on the city. It does not appear from the complaint or otherwise that there was money in the City Treasury properly applicable to pay the debt for which it was intended by the contract the city was to become liable. But as an answer obviating the objection founded on the twelfth section of the Act, the plaintiff says: "The contract created no debt against the city at the time it was executed." Literally this may be true, because the contract was executory, and the debt contemplated by it was to accrue and become due at some time in the future. If no debt could accrue and become due the plaintiff under the contract, then it was not possible for him to sustain any injury by its violation. Hence, to maintain the action in this case, it was necessary to assume that if the plaintiff had been permitted to proceed under the contract, the corporation would have recovered at least some of the lots in the actions to be commenced and prosecuted by the plaintiff, and that upon such recovery the defendant herein would have become indebted to the plaintiff. The Common Council had no authority to provide for the creation of a debt to arise in the future, any more than to create a debt directly

and *in presenti*.   The creation of a debt was contemplated and intended by the contract as much as if it had been provided to pay a sum certain at a particular day, depending upon no other contingency than that the plaintiff should render certain services as the consideration therefor.

The Common Council were the agents of the corporation, and their authority was special and their power distinctly circumscribed.   The corporation could not become bound by the contract unless it was made by the Mayor and Council in the exercise of the power delegated by the Act of incorporation, and within its limits.   In dealing with these officers the plaintiff was bound to know the extent of their power, and to see that the condition, on which alone it could arise and subsist, had existence.   (*Blum* v. *Robertson*, 24 Cal. 140 ; *Branham* v. *Mayor, etc., of San José*, 24 Cal. 604 ; *Brady* v. *Mayor, etc., of New York*, 2 Bosw. 173 ; *Swift* v. *City of Williamsburg*, 24 Barb. 427.)   The fact that these officers assumed to make the contract and thus bind the corporation, did not create the presumption that they possessed the power which they attempted to exercise, for no officer can acquire power or jurisdiction by the mere assertion of it. (*McMinn* v. *Wheland*, 27 Cal. 314 ; *People* v. *Cassels*, 5 Hill, 168 ; *Harrington* v. *The People*, 6 Barb. 610.)

Upon the trial of the issues joined, the defendant offered to prove that the facts, on which alone the power of the Mayor and Common Council could arise, had no existence, but the Court sustained the objection interposed by the plaintiff, to the effect that the proof offered was irrelevant, and constituted no defense to the action.   The demurrer having been overruled, and the defendant put upon a defense upon an issue of fact, we do not see upon what ground the defense proposed to be proved could be rejected.   If the Mayor and Council had no authority to enter into the contract, it was not binding on the corporation ; and that such officers had no such authority, it was the object of the evidence offered to show.

There are several other points presented by the record which

we shall omit to consider, as unnecessary to a decision of this case.

Judgment reversed.

Mr. Justice RHODES being disqualified, did not sit in this cause.