FRANK M. PIXLEY, G. FRANK SMITH, AND WIL-LIAM HALE, LATE PARTNERS CARRYING ON THE BUSI-NESS AND PRACTICE OF LAWYERS, UNDER THE NAME, FIRM AND STYLE OF PIXLEY, SMITH & HALE *v.* THE WEST-ERN PACIFIC RAILROAD COMPANY.

POWERS OF RAILROAD CORPORATIONS.— Under the Act for the incorporation of railroad companies, passed May 20th, 1861, railroad corporations possessed all the powers and privileges, for the purpose of carrying on the business of the corporation, that private individuals and natural persons had.

IDEM.—The power to make and execute contracts the Act has committed to the Directors of the corporation, and declared, among other things, that " no contract shall be binding upon the company unless made in writing."

IDEM.—The words of the Act relied on by appellant to defeat plaintiffs' recovery, to wit, " no contract shall be binding on the company unless made in writing," properly interpreted, relate to executory contracts.

IDEM.—The words of the Act, " no contract shall be binding on the company unless made in writing," when considered in conjunction with the other provisions of the statute, and in view of the objects of the corporation, are not to be read as exempting the company from liability in all cases founded in contract not in writing.

IDEM.—It may be that while such contract not in writing remains executory on both sides, an action could not be maintained by either party to enforce it; but where one of the contracting parties has completely performed it on his part, and thereby rendered to the other the consideration stipulated, the party having received the consideration promised cannot be permitted to escape liability on the naked letter of the statute, because the meaning of the law is not such as to afford immunity from liability in such a case.

IDEM.—The clause of the Act under consideration does not render verbal contracts of the kind declared on by plaintiffs void; they are voidable so long as unexecuted on both sides, but when executed by one of the parties by complete performance, the other becomes liable, and must render the consideration stipulated in advance, or a reasonable compensation, to be ascertained as a matter of fact, if not fixed and agreed upon by the parties themselves.

RATIFICATION OF CONTRACT. — Where the contract with plaintiffs sued on was entered into, first, by the President of the railroad company, defendant, but there

| 33 | 183 |
| 100 | 72 |
| 33 | 183 |
| a102 | 546 |
| 33 | 183 |
| 121 | 206 |
| 33 | 183 |
| e129 | 54 |
| 33 | 183 |
| 137 | 447 |

was subsequently a ratification by the Directors *in pais* of what the President had done, the contract was not *ultra vires*, and therefore void.

IDEM.—The facts, to wit, that after plaintiffs' employment by the President of the railroad company, and while they were engaged in the service of the company under this employment, the President had frequent interviews with them in respect to the business they were managing, and during the same time the Direc-·tors and officers of the company, who knew of the employment of the plaintiffs and of their attending to the business of the company, advised with them respecting such business, afford sufficient evidence to establish a ratification by the Directors *in pais* of what the President had done ; or that the open and notorious exercise of the power to enter into this contract must be regarded as presupposing an authority delegated by the Board of Directors, in some form accredited by law, to the President of the company, for the purpose.

PRESUMPTION OF RATIFICATION.—The same presumptions are applicable to corporations as to private persons ; hence, though the records of the defendant may have been an entire blank as to any corporate action of the Board of Directors respecting the employment of the plaintiffs, or services performed by them for the company, it does not follow that the Board did not pass a vote authorizing the President to make the contract ; for a vote of the Board of Directors may be presumed from its acts, though there is no proof of such vote on the corporate record.

POWER OF RAILROAD COMPANY TO CONTRACT. — The contract entered into with plaintiffs was one which the corporation, by its duly constituted agents, had the capacity to make, and therein is distinguishable from *Zottman* v. *The City and County of San Francisco*, 20 Cal. 96, and *Wallace* v. *The Mayor and Common Council of San José*, 29 Cal. 180.

APPEAL from the District Court, Fifteenth Judicial District, City and County of San Francisco.

On the 23d day of May, 1863, Wheeler N. French brought an action against the corporations called the " Central Pacific Railroad of California " and " The Western Pacific Railroad Company." The action mentioned is that entitled *Wheeler N. French* v. *Henry F. Teschemaker et als.*, and is reported in 24 Cal. 518. On the 11th day of June, 1863, Timothy Dame, President of the Western Pacific Railroad Company, on behalf of defendant, made a verbal contract with plaintiffs to defend said action for defendant, and paid plaintiffs five hundred dollars retainer in said action. Under said employment plaintiffs conducted the defence to said action to its conclusion, and as the fruit of said litigation, defendant ultimately

received into its treasury two hundred and fifty thousand dollars in San Francisco bonds. Defendant appealed.

The other facts are stated in the opinion of the Court.

*Patterson, Wallace & Stow*, for Appellant, argued:

That the Court below erred in permitting plaintiffs to prove that they were *verbally* employed by Timothy Dame, President of the defendant, to defend the *French* action; and cited the Act of 1861, concerning railroad corporations, (Stats. 1861, Sec. 10, p. 611;) Angell & Ames on Corps. 278; *Head* v. *Prov. Ins. Company*, 2 Cranch, 168; *Wallace* v. *The Mayor and Common Council of San José*, 29 Cal. 180; *Petersburg* v. *Metzlier*, 21 Ill. 205. That the language of the statute is *prohibitory*. Both English and American statutes regulating the mode of making contracts by corporations (though not in terms forbidding a resort to other modes) are held to *confine* them to the modes mentioned in the statute; and cited *Cope* v. *The Thames H. D. and R. Co.*, 3 Exch. 841; *Homersham* v. *The Wolverhampton W. Co.*, 6 Exch. 135; *Diggle* v. *The London and B. R. Co.*, 5 Exch. 441. (See the following American cases: *President, etc.* v. *Niles*, 1 Doug., Mich. 401; *Root* v. *Godard*, 3 McLean, 102; *Pennsylvania Co.* v. *Dandridge*, 8 Gill. & J. 248; *Leavitt* v. *Palmer*, 3 Coms. 19; *Safford* v. *Wycoff*, 1 Hill, 11; *Hood* v. *New York and N. H. Co.*, 22 Conn. 502; *Pearce* v. *Madison R. R. Co.* 21 How. 441.) That the provisions of the Act of the Legislature are the charter of the corporation, and constitute a contract between *every stockholder* and the corporation; and cited *The Northern R. R. Co.* v. *Miller*, 10 Barb. 28; *Miss. O. and R. R. Co.* v. *Cross*, 20 Ark. 449; *Young* v. *Harrison*, 6 Ga. 130; *Lee* v. *Milner*, 2 You. & Coll. 619; *M. B. P. R. Co.* v. *Lapham*, 18 Barb. 318; 5 Ohio State, 136; 32 Miss. 373; 35 Miss. 692. That Dame and the other Directors could not *ratify* their own *void act;* and cited *Hotchin* v. *Kent*, 8 Mich. 528; *McCullough* v. *Moss*, 5 Denio, 577; *Mount Sterling & J. T. R. Co.* v. *Looney*, 1 Met., Ky. 552.

24

*T. J. Bergen,* for Respondent.

The provision of section ten, referred to by counsel, can, obviously, only refer to express contracts, not obligations arising by operation of law.

Suppose the company should enter upon lands by permission of the owner, pay rent therefor for a time, then decline either to pay rent or deliver up possession of the premises; in a summary proceeding to evict the company as a tenant holding over, could the company defeat the proceedings upon the ground that the relation of landlord and tenant did not exist, as there was no contract in writing? Again: Could a person who had travelled on the cars of the company, or had merchandise transported over its lines, successfully resist payment, because there had been no contract in writing? Should a person be injured by travelling on the cars of the company, could the company successfully defend on the ground that there having been no contract in writing the company were under no obligation?

Should the company appropriate the property of a man, could they successfully defend, on the ground of absence of contract in writing? This is more than ever was claimed for municipal corporations, under the stringent decisions of Mr. Justice Field on the subject. (*McCracken* v. *City of San Francisco,* 16 Cal. 63.) Such a rule would be alike impolitic and impracticable; nor should the language of the Legislature be so construed, unless imperiously required.

A distinction is made in the books between municipal and mercantile or trading corporations. The distinction is substantial, and founded on reason and justice. Municipal corporations are the creatures of statute, instituted for governmental purposes, vested only with such powers as the Legislature deem necessary in this behalf, and conducted by the officers thereof, over whom citizens at large have no direct control. These officers are permanent, and not liable to amotion. Individual members of the community have no immediate voice in the municipal government. Accordingly,

they act upon the old adage that what is every one's business is no one's business. Hence the propriety and necessity of a strict construction of the powers of such corporations. The corporations themselves, too, are not clothed with general and plenary powers; on the contrary, they are not only limited in power, but also in the mode of its ·exercise. Not so with mercantile or trading corporations. They are generally vested " with all the powers and privileges for the purpose of carrying on the business of the corporation that private individuals and natural persons enjoy." (Stat. 1861, p. 608, Sec. 3; 6 Cal. 7; 9 Cal. 469; 10 Cal. 401; 17 Cal. 594.)

It is a rule of law recognized in every State of the Union, and to be found in every elementary work, that the contract of a corporation, as of an individual, may be implied from the acts of the corporation or of their authorized agent; and that if a corporation take and hold the benefit derived from an unauthorized contract, it is estopped from denying the authority of the agent. (*Olcott* v. *Tioga R. R. Co.*, 27 N. Y. 556; *Barnes* v. *Ontario Bank*, 19 N. Y. 155; *Mechanics' Bank* v. *Bank of Columbia*, 5 Wheat. 326; *Fister* v. *La Rue*, 15 Barb. 325; *Church* v. *Imperial Gaslight Co.*, 6 A. & El. 846; *Beverby* v. *Lincoln Gaslight Co.*, A. & El. 829; *Hall* v. *Mayor of Swansea*, 8 A. & El., N. S. 526; *Sanders* v. *St. Keats' Union*, 8 A. & El., N. S. 811; *Doe* v. *Taniere*, 12 A. & El., N. S. 1,012; *Lohman* v. *N. Y. & Erie R. R. Co.*, 2 Sandf. 52; *Beers* v. *Phœnix Ins. Co.*, 14 Barb. 360; *Argenti* v. *City of San Francisco*, 16 Cal. 252; *Bank of Columbia* v. *Patterson's Heirs*, 7 Cr. 209; *Dunn* v. *St. Andrew's Church*, 14 Johns. 118; *Bank of U. S.* v. *Dandridge*, 12 Wheat. 64; *Trundy* v. *Farrar*, 32 Me. 225; *The Episcopal Charitable Society* v. *Episcopal Church in Dedham*, 1 Pick. 373; *The Proprietors of the Canal Bridge* v. *Gordon*, 1 Pick. 304.)

By the Court, Currey, C. J. :

Action for work, labor and services rendered by the plaintiffs as attorneys and counsellors at law, for the defendant, a corporation duly organized and constituted under the Act of the Legislature, entitled " An Act to provide for the incorporation of railroad companies and the management of the affairs thereof, and other matters relating thereto," passed on the 20th of May, 1861, and of the several Acts supplementary thereto and amendatory thereof.  The corporation was organized in December, 1862, and the plaintiffs were employed in June, 1863, by the President of the railroad company, and thereafter they rendered and performed labor and services in and about the business of the company, in fulfilment of their obligation under their employment.  While the plaintiffs were engaged in the defendant's service the President of the company had frequent interviews with them in respect to the business which they were managing, and during the same time the Directors and officers of the company, who knew of the employment of the plaintiffs and of their attending to the business of the company, advised with them respecting such business.  It was proved on the trial that the services rendered by the plaintiffs were worth five thousand five hundred dollars, for which sum, less five hundred dollars, before then paid, the jury rendered a verdict in their favor, on which judgment was entered.

The books and records of the corporation were produced on the trial, but it did not appear therefrom that any corporate action had been taken by the Board of Directors, assembled or otherwise, concerning any employment of the plaintiffs as attorneys for the corporation; nor that there was such an action as *French* v. *Teschemacher*, in and about which the work, labor and services mentioned were rendered and performed; nor did it appear on the trial that at any meeting of the Board of Directors any mention was made of the action of *French* v. *Teschemacher*, or of the employment of the plaintiffs therein.

The evidence offered in behalf of plaintiffs was objected to as incompetent and the reason assigned in support of the objection, when made, was, that the evidence of the employment was not in writing; that such employment was not authorized by the bylaws of the corporation, nor by resolution of the Board of Directors. The objection in all the forms made was overruled, and exceptions to the action of the Court thereon duly taken by the defendant.

The third section of the Act of 1861, (Laws 1861, p. 609,) under which the corporation was organized, declares that such corporation "shall be capable in law to make all contracts, acquire real and personal property, purchase, hold and convey any and all real and personal property whatever necessary for the construction, completion and maintenance of such railroad and for the erection of all necessary buildings and yards or places and appurtenances for the use of the same, and be capable of suing and being sued, and have a common or corporate seal, and make and alter the same at pleasure, and generally to possess all the powers and privileges for the purpose of carrying on the business of the corporation that private individuals and natural persons now enjoy." The ninth section of the Act provides that the Directors of any railroad company incorporated under any law of the State in force, "shall, for and on behalf of such company, manage the affairs thereof, make and execute contracts of whatever nature or kind, fully and completely to carry out the objects and purposes of such corporation, in any such way and manner as they may think proper, and exercise generally the corporate powers of such company; and such Directors shall also have full power to make such bylaws as they may think proper, and alter the same from time to time, for the transfer of the stock and the management of the property and business of the company of every description whatever, within the objects and purposes of such company, and for prescribing the duties of officers, artificers and employés of said company, and for the appointment of all officers, and all else that by them may be deemed needful

and proper within the scope and power of said company; provided that such bylaws shall be approved by the stockholders, and shall not be inconsistent or in conflict with the laws of this State or with the articles of association."

The tenth section of the Act reads as follows: "SEC. 10. The Directors shall also cause to be kept a book, to be called 'Record of Corporation Debts,' in which the Secretary shall record all written contracts of the Directors, and a succinct statement of the debts of the company, the amount thereof, and with whom made, which book shall at all times be open to the inspection of any stockholder or party in interest. When any contract or debt shall be paid or discharged, the Secretary shall make a memorandum thereof in the margin, or in some convenient place in the record, where the same is recorded. No contract shall be binding upon the company unless made in writing."

The defendant offered to prove that at the time the plaintiffs were employed by the President of the company, as before stated, there was, and since then to the time of the trial had remained in force, certain bylaws of said corporation, duly adopted and upon its records, one of which is in the following words: "No contract shall be binding on the company unless previously sanctioned and ordered by the Board of Directors; and all contracts made by the Board of Directors, or any officer, agent or employé of the company, shall be subject to and shall contain the express stipulation that no stockholder shall be individually or personally liable or bound for the debts of the company, beyond or exceeding the actual amount of stock by him subscribed or held, and all contracts not containing or subject to such stipulation shall be void, and neither the Board of Directors, nor any officer, agent or employé of the company, nor any other person, shall have the power or authority to bind the company or the stockholders by any contract or agreement, unless the same shall contain such stipulation."

The plaintiffs objected to the evidence so offered, on

various grounds, and the objection was sustained, and the defendant duly excepted.

After verdict and judgment the defendant made an application for a new trial, which proved ineffectual, and thereupon appealed. The real, and in fact the only question, which exists in the case, is whether the corporation—the Western Pacific Railroad Company—could be made liable on any contract entered into by the proper officers of the company, unless the same was reduced in some form to writing.

By the third section of the Act of 1861, as we have already seen, the corporation possessed, at the time the President of the company employed the plaintiffs, all the powers and privileges for the purpose of carrying on the business of the corporation that private individuals and natural persons had. The power to make and execute contracts the Act has committed to the Directors of the corporation, and declared, among other things, that " no contract shall be binding upon the company unless made in writing." But notwithstanding the power to make and execute contracts has been vested in the Board of Directors, we do not understand the objection of the defendant to be that the contract in the first instance entered into by the President of the company with the plaintiffs was *ultra vires*, and therefore void. We presume the defendant has foreborne any such objection, because the evidence sufficiently established a ratification by the Directors *in pais* of what the President had done, or that the open and notorious exercise of the power to enter into this contract must be regarded as presupposing an authority delegated by the Board of Directors, in some form accredited by law, to the President of the company for the purpose. (*United States* v. *Dandridge*, 12 Wheat. 70 ; *Olcott* v. *Tioga Railroad Co.*, 27 N. Y. 558, 559 ; *Hoyt* v. *Thompson*, 19 N. Y. 215, 216 ; *Argenti* v. *City of San Francisco*, 16 Cal. 265, 266 ; *Bank of Kentucky* v. *Schuylkill Bank*, 1 Parsons' Select Cases in Equity, 250, 251.)

In *Bank of Kentucky* v. *Schuylkill Bank* the Court said :

" The artificial technicalities which in the earlier periods of the common law clogged corporations in entering into contracts and embarrassed individuals in asserting them against these bodies have given way before the advance of modern necessities and intelligence, so that few differences now exist in the media of proof in establishing a contract against a corporation made in accordance with its charter, and a natural person. It is now firmly established that a corporation may be bound by a promise, express or implied, resulting from the acts of its authorized agents, although such authority be only by virtue of a corporate vote, unaccompanied with the corporate seal. By the general rules of evidence presumptions are continually made in cases of private persons, of acts even of the most solemn nature, when these acts are the natural results or necessary accompaniment of other circumstances. The same presumptions are applicable to corporations. Acts of corporations which presuppose the existence of other acts to make them legally operative, are presumptive proof of the latter. In short, the acts of artificial persons afford the same presumptions as the acts of natural persons. Each affords presumptions from acts done of what must have preceded them. A vote of a corporation may be presumed from other acts, though there is no proof of such vote on the corporate record; for the omission of the corporation to record its own doings cannot prejudice the rights of a party relying upon the good faith of an actual vote of the corporation." The principles here laid down are also ably and elaborately discussed by Mr. Justice Story in his opinion in *United States* v. *Dandridge*.

The statement on motion for a new trial shows that " on production of the books of the entire records and the examination thereof, it did not appear thereby that any corporate action had been taken by the Board of Directors, assembled or otherwise, concerning any employment of the plaintiffs as attorneys for the corporation in said action of *French* v. *Teschemacher*, and it did not appear by the said records in anywise, and it did not appear on the trial in anywise, that at

any meeting or assembly of said Board of Directors any mention was made in anywise of said action of *French* v. *Teschemacher*, or of the employment of plaintiffs therein." Though the records of the corporation may have been an entire blank as to any corporate action of the Board of Directors respecting the employment of the plaintiffs, and though no evidence was produced at the trial of any particular mention of the case named or of the employment of the plaintiffs, it does not therefore follow that the Board did not pass a vote authorizing the President to make the contract; for, as said by the Court in *Bank of Kentucky* v. *Schuylkill Bank*, " a vote of a corporation may be presumed from other acts, though there is no proof of such vote on the corporate record."

Returning to the objection made by the defendant to the contract entered into by the company by its President with the plaintiffs, we find that it relates entirely to the mode and manner of contracting, which it is claimed for the defendant is in effect prescribed by the statute, negatively if not affirmatively, by the immunity contained in the clause, " no contract shall be binding on the company unless made in writing." These words, in their largest import, are broad enough to embrace every species of contract, and to require, in the most exhaustive sense, every agreement or undertaking on the part of the company, to be in writing in order to be of any binding obligation. But is it necessary to give to the language of the statute a scope so comprehensive, when to do so would involve results of extreme inconvenience not only to individuals dealing with the company, but to the company itself? The words of the statute relied on by the defendant in bar of the plaintiffs' right to recover, properly interpreted,  relate to executory contracts. In our judgment they are not, when considered in conjunction with the other provisions of the statute and in view of the objects of the corporation, to be read as exempting the company from liability in all cases founded in contract not in writing. It may be that while such contract remains executory on both sides, an action

could not be maintained by either party to enforce it, but where one of the contracting parties has completely performed it on his part, and thereby rendered to the other the consideration stipulated, the party having received the consideration promised, cannot be permitted to escape liability on the naked letter of the statute, because the meaning of the law is not such as to afford immunity from liability in such a case.

To give the statute the construction which the defendant insists upon would be to hold that the company could not be compelled to answer for any breach of a verbal contract to transport over its road and deliver at an appointed destination goods intrusted to it for the purpose, for a consideration paid; or for a breach of a like contract to safely carry a passenger to a place designated, for a consideration completely performed on his part. On the other hand, such construction would be to hold that the company could not recover for the carriage of property or persons over the road after the service had been rendered, unless the contract to pay therefor was in writing; because contracts between a railroad corporation and an individual, as well as between natural persons, must be mutual, or else neither party is bound.

The clause of the Act under consideration does not render verbal contracts, of the kind of that on which this action was brought, void. They are voidable so long as unexecuted on both sides; but when executed by one of the parties by complete performance, the other becomes liable and must render the consideration stipulated in advance, or a reasonable compensation to be ascertained as a matter of fact, if not fixed and agreed upon by the parties themselves. The doctrine here laid down must be admitted to be just, and we have no doubt of its perfect accord with the true intent and meaning of the Act, which places the corporation acting within the scope of its powers upon the same footing as natural persons. The third section of the Act declares such corporations capable of suing and being sued, and generally as possessing all the powers and privileges for the purpose of

carrying on the business of the corporation that private individuals and natural persons enjoy. In illustration of the principle upon which we have endeavored to resolve the question considered, we may refer to cases arising upon constructions of various provisions of the Statute of Frauds.

The fourth section of Ch. 3, Stat. 29, Car. II, provides that no action shall be brought to charge any person upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized. In *Donellan* v. *Read*, 3 Barn. & Adol. 899, it was decided that where a contract within the letter of the statute had been fully performed on one side, the consideration of that performance, though by the contract not payable until after the expiration of the year, could be recovered by action when the stipulated time arrived. (Browne on Statute of Frauds, Sec. 117; *Lockwood* v. *Barnes*, 3 Hill, 130.) And so a party who has paid money in fulfilment of a verbal contract for an interest in land, which cannot be enforced because within the Statute of Frauds, may recover back the money so paid in an action for money had and received upon the refusal or inability of the other party to the contract to carry into execution the contract on his part. (*Kidder* v. *Hunt*, 1 Pick. 328; *Seymour* v. *Bennet*, 14 Mass. 266; *Barickman* v. *Kuykendall*, 6 Blackf. 22.) In like manner, one who has rendered services in execution of a verbal contract, which on account of the statute cannot be enforced against the other party, can recover the value of the services upon a *quantum meruit*. (*Souch* v. *Strawbridge*, 2 Com. Bench, 813, 814; *Burlingame* v. *Burlingame*, 7 Cow. 94; *King* v. *Brown*, 2 Hill, 485; Browne on Stat. of Frauds, Sec. 118.) It would indeed be extremely unjust if the law was so construed as to permit a party, after having obtained the benefit of a contract, originally within the Statute of Frauds or other statute of like or analagous nature, not only

to avoid his agreement, binding him *in foro consciencia,* but to retain the consideration or benefit received without rendering for it any recompense.

In the case of *Fister* v. *La Rue and Others, Trustees, etc.,* 15 Barb. 323, it was objected to the recovery by the plaintiff, that she was not employed by the corporation to render the services for which she sued, in the mode and manner prescribed by the statute. But the Court held that in an action brought upon an executed contract, to recover for services rendered under it, no proof that the contract was made on the part of the corporation in the mode and manner prescribed by the statute was necessary. The Court in further consideration of the question said: "It is well settled, at least in this country, that where a person is employed for a corporation, by one assuming to act in its behalf, and goes on and renders the services according to the agreement, with the knowledge of its officers, and without notice that the contract is not recognized as valid and binding, such corporation will be held to have sanctioned and ratified the contract, and be compelled to pay for the services according to the agreement. Having availed itself of the services and received the benefits, it is bound in conscience to pay, and will not be heard to say that the original agreement was not made by a person legally authorized to contract. (Ang. & Ames on Corp., 216, 218, Ch. 8, Sec. 8.) Where the contract is still executory, and nothing has been done under it, and the action is to recover damages merely for non-performance, it is for the plaintiff to show a legal contract binding upon the corporation."

The case here cited clearly distinguishes between contracts executory and executed, recognizing the doctrine that so long as a contract remains entirely executory the party who seeks to recover merely for non-performance of it by the other, must show a legal contract binding upon the corporation.

In the consideration of this case we have proceeded on the theory that the contract entered into with the plaintiffs was one which the corporation by its duly constituted agents had

the capacity to make.   That the corporation had·such capacity is not attempted to be controverted, nor could it be with seeming plausibility.   The Act confers on the Directors the power to make and execute on behalf of the company contracts of every nature and ·kind, " to carry out the objects and purposes of such corporation, in any such way and manner as they may think proper."   The Act does not in terms provide what shall be the mode or manner of contracting, unless it be by the clause declaring that " No contract shall be binding upon the company unless made in writing." This clause is no interdiction to making a contract otherwise than in writing.   On the contrary, it is fairly to be implied from the words employed that the company is competent to make contracts not in writing, which it may perform if it elects so to do.   Then, if the corporation may so contract, and upon performance may lawfully demand the consideration therefor, it follows, upon the principle of reciprocity already alluded to, that when the company has by the terms of its contract promised to pay for services when performed, it cannot escape the consequences of its contract after having received the consideration for its promise, but must pay the consideration due, as a natural person would be bound to do under the like circumstances.

In conclusion, we may remark that we have not overlooked the cases of *Zottman* v. *The City and County of San Francisco*, 20 Cal. 96, and the cases therein cited, nor that of *Wallace* v. *The Mayor and Common Council of San José*, 29 Cal. 180. In the first of these cases it was held that where the charter of a municipal corporation prescribes the mode in which its contracts shall be made, the mode must be followed in order to render them valid and binding.   The doctrine thus declared had not its origin in that case, as will be observed by reference to the authorities referred to therein.   When to a corporation is prescribed, by the law of its being, the mode of exercising its power, it results necessarily that such mode must be observed in order to render its acts binding.   But when, by its organic law it is declared in general terms that

its proper officers shall for and in behalf of it manage its affairs and make and execute all contracts to carry out the objects and purposes of such corporation, in any way and manner which they may deem proper, it cannot be held that the corporate powers existing must be exercised in any particular mode. Therefore, mode, in such case, is not the measure of the corporate power. By reference to the portions of the Act above cited, it is to be seen that the Western Pacific Railroad Company is not restricted by the law of its being to any special mode and manner of exercising its corporate powers, but on the contrary, the third section of the Act provides that the corporation shall possess all the powers and privileges for the purpose of carrying on its business that private individuals and natural persons enjoy; and the ninth section provides that the Directors of the company shall manage the affairs thereof, and make and execute all contracts necessary to carry into effect the objects and purposes of the corporation, in such way and manner as they may think proper.

In the case of *Wallace* v. *The Mayor and Common Council of San José,* the question decided was one relating to the power of the Common Council. In that case the Common Council entered into a contract with the plaintiff, which was plainly beyond the power delegated by the Act of incorporation, and the point determined was that the corporation could not be rendered liable upon it, for the obvious reason that it was not the contract of the corporation—it being *ultra vires* under the organic law of the corporation.

Judgment affirmed.

SHAFTER, J., concurring specially:

I concur in the judgment, and on the ground that if a person not duly authorized make a contract on behalf of a trading corporation, and the corporation take and hold the benefit derived from such contract, it will be held to have

made the contract its own by ratification or adoption, and will be estopped from disputing its liability thereon.

It is quite impossible to reconcile the authorities upon this subject, but in so far as trading corporations are concerned, the decisions, in this State at least, are consistent with each other and sustain the proposition. Some of them hold municipal corporations to be within the principle. (*Gas Company* v. *San Francisco*, 9 Cal. 453; *Argenti* v. *San Francisco*, 16 Cal. 265; *Fraylor* v. *Sonora Mining Co.*, 17 Cal. 594; *Rosborough* v. *The Shasta River Canal Co.*, 22 Cal. 556; *Allen* v. *Citizens' Steam Navigation Co.*, 22 Cal. 28.)

SAWYER, J., concurring specially:

This is an action to recover attorney's fees in the suit of *French* v. *Central Pacific Railroad Company and Western Pacific Railroad Company*, in which plaintiffs, upon the request of the President and officers of the company, acted as attorneys and conducted the defence to a successful termination. The defendant, as the result of the litigation, received into its treasury two hundred and fifty thousand dollars of the bonds of the City and County of San Francisco. The main point, in the case, to which all others is subordinate, is, that there was no contract of retainer in writing between plaintiffs and defendant, and, for that reason, no liability could be incurred by the defendant to pay for the services. The question arises, under section ten of the Act of 1861, concerning railroad corporations, which provides that "the Directors shall cause to be kept a book, to be called 'Record of Corporation Debts,' in which the Secretary shall record all *written* contracts of the Directors and a succinct statement of the debts of the company, the amount thereof, and with whom made; which book shall at all times be open to the inspection of any stockholder or party in interest. When any contract or debt shall be paid or discharged, the Secretary shall make a memorandum thereof in the margin, or in some convenient

place in the record, where the same is recorded.  No con-
tract shall be binding upon the company unless *made in
writing.*"

The last clause is the one supposed to be an insuperable
obstacle in the way of a recovery in this case.  When taken
in connection with the context, it is not so clear what was
intended by this provision.  But, manifestly, it cannot possi-
bly have been intended to have so broad a scope as is claimed
for it; for, to give it such a construction, would be, to so
utterly bind the company down to a mode of proceeding,
that, under it, it would be utterly impossible for it to perform
its functions, or transact its ordinary business.  It could not
do the least thing in the way of contract, whereby a right is
acquired, or a responsibility incurred about the smallest mat-
ters, which are occurring every minute in the day, without
making a contract in writing and having it recorded by the
Secretary in the " Record of Corporation Debts."  It would
be impossible to make a contract, although fully executed on
one side, which would bind the other party, to carry a passen-
ger, or a pound of freight from station to station, or purchase
a cord of wood, or a pint of oil, without these formalities.
To give the provision any such construction would be absurd
in the extreme.  No man in his senses could knowingly vote
for such a law, and no sane man would attempt to build, or
operate, a railroad under its provisions.  The provision must
be limited to express contracts wholly executory — such
contracts as are generally made in the ordinary course of
business, when important matters are involved, and there is
time for deliberation, and in which the terms are usually
arranged in advance, and specified with more or less particu-
larity.  It cannot refer to those liabilities, which the law itself
implies from benefits received, and actually enjoyed, without
making any express contract in advance, where the services
have been performed on one side, and the consideration
received and enjoyed by the other.  The provision itself says,
all " *written* contracts " shall be recorded, as if there would
necessarily be *other* contracts.  If there were to be no others

of any kind, why not say *all contracts?* All the provisions must be construed together, and so construed, if possible, that while some significance is allowed to every word, there may still be no conflict. The corporation has a capacity to be sued, and when sued it is bound to appear and defend its interests, or they will be sacrificed, and it can only appear by attorney. The employment of an attorney is not *ultra vires.* It is one of the necessities resulting from the capacity to be sued, likely to occur at any moment, and the emergency may be sudden. The law itself casts upon the corporation the necessity of defending its rights when sued, and it may be impossible to make a written contract with an attorney. It takes two to make a contract. The corporation defended in this instance, and the question was, whether it should gain, or lose, the sum of two hundred and fifty thousand dollars. It could only maintain its right by appearing by attorney. The plaintiffs appeared with the knowledge and concurrence of the officers of the defendant, and made a successful defence. The corporation actually received, and it still retains, the avails of the litigation. This reception of the proceeds is a corporate act, for there is nothing to inhibit it. It had the benefit of the service without making any express contract. The service was performed, and the benefits enjoyed, and there is nothing to inhibit it from availing itself of the service, or enjoying its fruits. Can it now retain and enjoy, the avails of the litigation, and escape liability for the service by which they were acquired? In my judgment, the provision in question has no application, and the law of the land casts upon the defendant the liability to pay what the services are reasonably worth. The question might have been different had the contract of retainer been wholly executory, only, and an action been brought by either party to recover damages for a breach in not performing. This provision has been since repealed, and its construction with reference to later transactions is no longer important.

The case is different from *Wallace* v. *San José.* In that

case the contract itself was *ultra vires* under the circumstances. There was then no power to make the contract at all. The inhibitory provision was not of a general character, but it was very specific, and applied particularly to the case then in hand. There could be no doubt about it. Upon the whole, without noticing particularly the subordinate questions, I am not satisfied that there is any error that would justify a reversal of the judgment. The judgment and order denying new trial should be affirmed.