CHIPMAN v. WENTWORTH. See Case No. 4,623.

---

## Case No. 2,686.

### CHISHOLM v. MONTGOMERY.

[2 Woods, 584.][1]

Circuit Court, M. D. Alabama. May Term, 1875.

MUNICIPAL CORPORATIONS — POWERS — ISSUE OF BONDS — TAXATION — SUBSCRIPTION TO PLANK-ROAD COMPANY.

1. The power to issue commercial securities, the consideration of which cannot be inquired into in the hands of a bona fide holder, is not inherent in municipal corporations, nor can it be implied from the ordinary police powers given to such corporations.

2. A municipal corporation is but a subordinate branch of the government: it represents the state sovereignty in a limited district for specified purposes, which are local government and police.

[Cited in Lewis v. Shreveport, Case No. 8,331.]

3. The power of taxation is given to municipal corporations as a means of carrying out these purposes, and a diversion of the revenues to other purposes is unlawful and ultra vires.

[Cited in Lewis v. Shreveport, Case No. 8,331.]

4. A municipal corporation possesses no powers except such as are given expressly or by necessary implication.

[Cited in Lewis v. Shreveport, Case No. 8,331.]

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

5. Such a corporation has no power, without express authority, to subscribe to the stock of a railroad or plankroad company.

[Cited in Desmond v. City of Jefferson, 19 Fed. 486.]

6. A municipal corporation was authorized by a special act to borrow a specified sum of money, and issue its bonds therefor; the money was borrowed and bonds issued accordingly. *Held*, that the power was thereby exhausted and became extinct.

[Cited in Hopper v. Town of Covington, 8 Fed. 779.]

7. A municipal corporation, without authority of law, subscribed for stock in a plankroad company, and issued its negotiable securities in payment thereof. *Held*, that it was not estopped by the resolutions of the city council, the acts of its officers, or by the negotiable form or other matter appearing upon the face of the bonds, from denying the authority of its officers to pledge the faith of the city in aid of the said road, or to issue the said bonds.

[Cited in Lewis v. County Com'rs, 3 Fed. 196.]

8. The fact that plaintiffs are bona fide holders of bonds issued by a municipal corporation is not a good reply to a plea setting up the want of power in the corporation to issue them.

This was an action at law brought [by Robert T. Chisholm] upon ten bonds for five hundred dollars each, purporting to have been issued by the city of Montgomery. The defense was the want of power in the city to contract the debt for which the bonds were given, and to issue the bonds. There was no dispute between the parties about the facts in the case, and an agreed statement of the same was submitted to the court. From this the following facts appeared: The charter of the city of Montgomery became a law on the 23d day of December, 1837, and by it there was conferred upon the city authorities the usual powers granted to municipal corporations, among which were the power to clean and keep in repair the streets and alleys, and to enact such laws and regulations as might be deemed necessary in relation to the streets and highways; also the power to do every other matter and thing which they might deem necessary for the good order and welfare of the city. On February 2, 1846, express power was conferred on the city, by an act of the legislature, to raise a sum of money, not exceeding seventy-five thousand dollars, by the sale of city bonds for that amount. This power was exercised. The bonds were immediately issued, and the money raised thereby was applied to the erection of a capitol building in the city of Montgomery. On the 2d day of February, 1850, the legislature chartered the Montgomery South Plankroad Company, with authority to "locate and construct a plankroad from the southern line of the city of Montgomery in a direct line south, as near as may be, crossing the Catoma creek at or near Norman's bridge, and extending south for thirty miles, and to receive from the authorities of any city or town in which said road might terminate, or through which it might run, the use of any street or streets for the location and construction of said road, and the municipal authorities of any such city

or town were authorized to grant to said company the use of any street or streets for the purpose aforesaid." On February 22, 1850, the city council passed a resolution to subscribe twenty thousand dollars to the stock of this plankroad company; on September 12, 1850, the city council authorized the issue of the bonds of the city to pay for this stock, and they were issued on the 20th of the same month. They were negotiable in form, being payable to bearer in fifteen years after date. They were delivered by the city to the plankroad company, and were by it sold as stock securities in the market of Charleston, South Carolina, through brokers, at prices ranging from ninety to one hundred cents on the dollar. The bonds in suit are a part of said issue, and were bought by the plaintiff at par, in due course of trade, in December, 1850, before maturity of the bonds or any of the coupons attached thereto, and the plaintiff was the bona fide holder and owner of the bonds sued on by him. After the subscription of stock by the city, the plankroad company commenced work on its road, and constructed it from the Exchange Hotel, in the central business part of the city of Montgomery, running thence across the south line of the city to a point distant twenty miles, the city council having first granted to the plankroad company the right of way along Montgomery street from the said hotel to the city limits. Interest was paid by the plankroad company on some of the bonds, so issued, up to January 1, 1855, and on others by the city up to January 1, 1858, and the stock purchased by the issue of the bonds was represented by the city in the control and management of the plankroad company. After January 1, 1858, no payment was made upon the bonds on account either of interest or principal. By an act of the general assembly, approved February 25, 1860, passed at the instance of the city council, it was authorized to "extend" the said bonds by an issue of new bonds running ten years, provided that at an election, held for that purpose, a majority of the real estate owners in the city should vote in favor of "extension;" but if a majority should vote against "extension," then the law was to have no force or effect whatever. The election was held under this act, and fifty-seven votes were cast for "extension," and one hundred and five against "extension." After the result of the election was made known, the city council resolved, that said bonds, in the hands of bona fide holders "are a just and honorable liability of the city, and as such, some provision should be made for their payment." The parties waived a jury and submitted the cause to the court upon the pleadings and agreed facts.

John T. Morgan, Walter L. Bragg, and Wm. S. Thorington, for plaintiff.

I. The defendant had power, under its charter, to make and issue the bonds: 1. Its pow-

ers relating to streets and highways were unrestrained and unlimited. Within the scope of these powers the city was its own judge of what property it would acquire, what streets it would have and how it would improve them. Ely v. Rochester, 26 Barb. 133; Inhabitants v. New Orleans, 14 La. Ann. 452; Royalton v. Royalton & W. Turnpike Co., 14 Vt. 322, 323; Callender v. Marsh, 1 Pick. 418; Graves v. Otis, 2 Hill, 466; Waddell v. Mayor, etc., of New York, 8 Barb. 95; Smith v. Washington, 20 How. [61 U. S.] 135. 2. To carry into effect these express powers, the power to borrow money and issue bonds is clearly implied. Mills v. Gleason, 11 Wis. 470; People v. Brennan, 39 Barb. 522; New York v. Buffalo, 2 Hill, 434; State v. Common Council of Madison, 7 Wis. 688. 3. In the exercise of these powers, the city had the same power to contract and bind itself that any other corporation, public or private, would have. Ang. & A. Corp. (9th Ed.) § 31; Atkins v. Randolph, 31 Vt. 237, 238; New England F. & M. Ins. Co. v. Robinson, 25 Ind. 536; Brady v. Mayor of Brooklyn, 1 Barb. 584; Madison Plankroad Co. v. Watertown Plankroad Co., 5 Wis. 173; Allegheny City v. McClurkan, 14 Pa. St. 81. 4. A plankroad is an improved highway, a public improvement, which comes within the rule of being "indispensable to the public interest and successful pursuit of even local business." Mitchell v. Burlington, 4 Wall. [71 U. S.] 274; Rogers v. Burlington, 3 Wall. [70 U. S.] 663. To authorize aid to such an improved highway, it is not necessary that it should even come within the city limits; it is sufficient if it be connected with the material interests of the city. Talbot v. Dent, 9 B. Mon. 535, 536. 5. In giving construction to the powers of a corporation, the language of the charter should, in general, be construed neither strictly nor liberally, but according to its fair and natural import with reference to the purpose and objects of the corporation. Enfield Toll Bridge Co. v. Hartford & N. H. R. Co., 17 Conn. 454; Cincinnati v. Stone, 5 Ohio St. 39; Downing v. Mt. Washington Road Co., 40 N. H. 230. The power to issue the bonds in this case was unmistakable, for a portion of the plankroad was built within the city limits and along one of its streets.

II. The bonds and coupons, by universal consent, have all the qualities of commercial paper (Mercer Co. v. Hackett, 1 Wall. [68 U. S.] 83; Meyer v. Muscatine, Id. 384; Aurora City v. West, 7 Wall. [74 U. S.] 105); and when a corporation has power, under any circumstances, to issue negotiable securities, the bona fide holder has the right to presume that they were issued under the circumstances which gave the requisite authority (Gelpcke v. City of Dubuque, 1 Wall. [68 U. S.] 203; Murray v. Lardner, 2 Wall. [69 U. S.] 110). The case is brought within the scope of this rule by the act of February 2, 1846, authorizing the city to issue bonds for seventy-five thousand dollars.

III. After the issue of the bonds the legislature, by the act of February 25, 1860, authorizing an extension of the bonds upon a vote of the real estate owners of the city in favor thereof, recognized the bonds as being the bonds of the city and ratified their issue. 1. The proof shows that the act was passed at the instance of the city council. It was a matter of sovereign discretion with the legislature whether or not it would recognize this bonded liability of the city as a debt, and thereby ratify it, and the court will presume that legislative discretion, in a case where it properly exists, has been properly exercised. Cooley, Const. Lim. 186, 187; People v. New York Cent. R. Co., 34 Barb. 137; People v. Lawrence, 36 Barb. 193; Mayor of Baltimore v. State, 15 Md. 376. 2. The subject matter of the act necessarily included by expression as well as direct implication the power exercised by the city in issuing the bonds. 3. Whenever a statute is passed in furtherance of an acknowledged principle of right and justice, every reason exists for its most liberal application. Hoffman v. Hoffman, 26 Ala. 545, Wolcott v. Pond, 19 Conn. 597. 4. A loan or subscription, if made without authority, is valid if confirmed by subsequent legislative authority. Bridgeport v. Housatonic Ry. Co., 15 Conn. 495; Campbell v. Kenosha, 5 Wall. [72 U. S.] 194–205; Atchison v. Butcher, 3 Kan. 104; Watson v. Mercer, 8 Pet. [33 U. S.] 38; Nutter v. Ricketts, 6 Iowa, 92; Bartholomew Co. v. Bright, 18 Ind. 93; Thomas v. Leland, 24 Wend. 65; Guilford v. Cornell, 18 Barb. 615; Thompson v. Lee Co., 3 Wall. [70 U. S.] 327; Town of Guilford v. Supervisors of Chenango Co., 13 N. Y. 143; Brewster v. Syracuse, 19 N. Y. 116. 5. What is implied is as effectual as what is expressed. Croxall v. Sherrard, 5 Wall. [72 U. S.] 283; U. S. v. Babbitt, 1 Black [66 U. S.] 61; Haight v. Holley, 3 Wend. 258; Stowel v. Zouch, 1 Plow. 366. 6. A ratification, whether express or implied, is equivalent to an original authority. Kenosha v. Lampson, 9 Wall. [76 U. S.] 478; Beloit v. Morgan, 7 Wall. [74 U. S.] 619; Campbell v. Kenosha, 5 Wall. [72 U. S.] 194. 7. A contract originally void may be made binding by an act of the legislature. Wilkinson v. Leland, 2 Pet. [27 U. S.] 627.

IV. Independent of the mere contract set out in the agreed facts, the plaintiff has the right to recover. By its transactions the city incurred liabilities which the law will enforce. 1. If a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation. Marsh v. Fulton Co., 10 Wall. [77 U. S.] 684; Maher v. Chicago, 38 Ill. 266–273; Gas Co. v. San Francisco, 9 Cal. 469, 473. 2. The legal effect of the city's transaction, as set out in the agreed facts, was a loan of money for

which the bonds sold by the plaintiff to the city were issued. Rogers v. Burlington, 3 Wall. [70 U. S.] 666, 667. The plaintiff can, therefore, recover on his count for money loaned.

John A. Elmore and Wm. A. Gunter, for defendant.

I. The city had no power to issue the bonds: 1. When a power, exercised by the officers or agents of a municipal corporation, is not expressly given by the charter, and is not necessary and proper to carry out the purposes of the incorporation, the corporation is not bound. It is unnecessary to cite authorities on this point. 2. When the power is given, but the charter requires it to be exercised by particular persons or bodies, 'or in a specified mode, or for a specified purpose, if not so exercised, the act is as much ultra vires and void as if the power had not been conferred. Zottman v. San Francisco, 20 Cal. 96; McSpedon v. Mayor of New York, 7 Bosw. 601; City of Leavenworth v. Rankin, 2 Kan. 351; Butler v. Charlestown, 7 Gray, 12; Mayor of Baltimore v. Eschbach, 18 Md. 276; The Floyd Acceptances, 7 Wall. [74 U. S.] 666; Head v. Insurance Co., 2 Cranch [6 U. S.] 127; White v. New Orleans, 15 La. Ann. 667; Dey v. Jersey City, 19 N. J. Eq. 412; Baltimore v. Reynolds, 20 Md. 1; Bank of U. S. v. Dandridge, 12 Wheat. [25 U. S.] 64; Diggle v. Railway Co., 5 Exch. 442; Homersham v. Wolverhampton Waterworks Co., 4 Eng. Law & Eq. 426; Trustees v. Cherry, 8 Ohio St. 564; McCracken v. San Francisco, 16 Cal. 591; Argenti v. San Francisco, Id. 255; Pimental v. San Francisco, 21 Cal. 351; Peterson v. Mayor, etc., New York, 17 N. Y. 449. 3. There is a class of cases in which it has been held that when a power is given to be exercised by certain persons upon prerequisites to be ascertained by them and they exercise the power, a holder for value of negotiable securities issued thereunder need not go behind the authority. But in all cases of this class there was express legislative authority to issue the bonds upon certain conditions, and they were issued by the body entrusted with the power to do so, and with the power of determining that the conditions had been complied with. Of this class are the following cases: Commissioners of Knox Co. v. Aspinwall, 21 How. [62 U. S.] 544; Bissell v. Jeffersonville, 24 How. [65 U. S.] 287; Moran v. Commissioners of Miami Co., 2 Black [67 U. S.] 723; Mercer Co. v. Hackett, 1 Wall. [68 U. S.] 85; Gelpcke v. Dubuque, Id. 175; Van Hostrup v. Madison City, Id. 271; Rogers v. Burlington, 3 Wall. [70 U. S.] 654; Supervisors v. Schenck, 5 Wall. [72 U. S.] 783; Lee County v. Rogers, 7 Wall. [74 U. S.] 181. 4. A distinction must be drawn between the cases of municipal and private corporations. The officers of a private corporation may, under certain circumstances, without authority, or even against positive instructions, bind the corporation. Farmers' & Mechanics' Bank v. Butchers' & Drovers' Bank, 14 N. Y. 623; Merchants' Bank v. State Bank, 10 Wall. [77 U. S.] 604. On the other hand, all persons who deal with a public corporation, or its officers, are bound at their peril to know whether the act done by its officers is authorized or not, or has been exercised as required by the terms of the charter. Brady v. Mayor, etc., of New York, 20 N. Y. 312; City of Leavenworth v. Rankin, 2 Kan. 357–371; Swift v. Williamsburg, 24 Barb. 427; Halstead v. Mayor, etc., 3 N. Y. 430; Marsh v. Fulton Co., 10 Wall. [77 U. S.] 676; Horn v. Baltimore, 30 Md. 218; Bridgeport v. Housatonic R. Co., 15 Conn. 475; Haynes v. Covington, 13 Smedes & M. 408; Taft v. Pittsford, 28 Vt. 286; Steam Nav. Co. v. Dandridge, 8 Gill & J. 248; Hodges v. Buffalo, 2 Denio, 110; Dill v. Inhabitants of Wareham, 7 Metc. [Mass.] 438; Branham v. San Jose, 24 Cal. 585; Sturtevants v. Alton [Case No. 13,580]; Wallace v. San Jose, 29 Cal. 180; State v. Haskell, 20 Iowa, 276. 5. The city charter gave no power to the city authorities to subscribe to the stock of a plankroad company, and to issue bonds therefor. (a) A special authority to borrow money, when once exercised, is exhausted. Savings Bank v. Winchester, 8 Allen, 109. (b) The power of a corporation can never be extended by construction beyond the object of its creation. Cooley, Const. Lim. 195, note 2; Pearce v. Madison & I. R. Co., 21 How. [62 U. S.] 441.

II. The bonds, having been issued without authority, are void in the hands of all persons. Marsh v. Fulton Co., 10 Wall. [77 U. S.] 676; Clay v. Nicholas Co. Ct., 4 Bush, 154; Logansport v. Legg, 20 Ind. 315; Pimental v. San Francisco, 21 Cal. 351; Price v. Grand Rapids & I. R. Co., 13 Ind. 58; State v. Bergen, 33 N. J. Law, 39.

III. There has been no ratification of these bonds. 1. Where contracts are ratified the ratification must be by a person or body having the power to ratify. Delafield v. Illinois, 2 Hill, 159; Hotchin v. Kent, 8 Mich. 526; Marsh v. Fulton Co., 10 Wall. [77 U. S.] 676; Dubuque Female College v. District Tp., 13 Iowa, 555; Estey v. Inhabitants of Westminster, 97 Mass. 324. 2. If the act be without the scope of the corporate authorities, no sort of ratification by them can make it good. Peterson v. Mayor, etc., of New York, 17 N. Y. 449; Brady v. Mayor, etc., 20 N. Y. 313; Hodges v. Buffalo, 2 Denio, 110; Gates v. Hancock, 45 N. H. 528; Reilly v. Philadelphia, 60 Pa. St. 467; Hood v. New York & N. H. R. Co., 22 Conn. 502; State v. Commissioners, 11 Ohio St. 183; Hopple v. Brown Township, 13 Ohio St. 311. 3. The act of the legislature authorizing an "extension" of the bonds on a condition therein specified was no ratification of the bonds. (a) The act was

to take effect upon a condition that never happened. (b) The city of Montgomery before the passage of the act was no more liable for these bonds than if they had never been made. To create a liability on the bonds by statute would be to make a contract between the parties—a matter beyond the power of legislation. Hoke v. Henderson, 4 Dev. 15; People v. Haws, 37 Barb. 440; Hasbrouck v. Milwaukee, 13 Wis. 37; Medford v. Learned, 16 Mass. 215.

IV. The plaintiff cannot recover on the common counts. When a contract is void because entered into by a corporation in violation of or without authority of its charter, the party can neither recover upon the contract nor upon any implied liability in any form. Brady v. Mayor, etc., 20 N. Y. 317; Hodges v. Buffalo, 2 Denio, 110; Halstead v. Mayor, etc., 3 N. Y. 430; Boom v. Utica, 2 Barb. 104; Grogan v. San Francisco, 18 Cal. 590; Swift v. Williamsburg, 24 Barb. 427.

BRADLEY, Circuit Justice. This action was brought to recover the amount of certain bonds and coupons thereto attached, issued by the corporate authorities of the city of Montgomery in the years 1850 and 1852, to aid in the construction of the Montgomery South Plankroad, and the Montgomery and Wetumpka Plankroad respectively, extending from points within said city to certain points several miles outside of its bounds.

The main question raised in the case is, whether the city authorities had any legal authority or power to issue said bonds. If they had, it is admitted that the plaintiffs are bona fide holders thereof, and entitled to recover; if they had not, no recovery can be had. The original charter of the city was an act of the legislature of Alabama, passed December 23, 1837, which remained without material alteration, so far as the question involved in this case is concerned, until the bonds in question were issued. A careful examination of this charter does not disclose any authority to make or issue bonds or other commercial securities of a negotiable character. It confers upon the corporation the ordinary police powers which are given to municipal bodies—such as the power to pass by-laws and ordinances necessary and proper to prevent contagious and infectious diseases, to preserve the public health, to prevent and remove nuisances, to license and regulate shows and theatrical amusements, to restrain gaming, to establish night watches and patrol, to make, alter and regulate streets, to regulate the wharves, to erect and regulate markets, the conveyance of water, etc.

In 1846, a special act was passed authorizing the city council to raise seventy-five thousand dollars by the issue of bonds to that amount; which was immediately done, and the money was applied to the erection of the state capitol in said city. The power was exhausted and became extinct. This very act, however, shows the public sense as to the incapacity of the city to issue bonds without special authority. The mode pointed out in the charter for raising revenues to meet the public expenditures was by taxation. Indebtedness incurred by the authorities at any time, in carrying out any of the prescribed objects of the charter, is undoubtedly binding on the city; but such indebtedness, and the ordinary certificates or vouchers given as evidence thereof, stand on a very different ground from that of commercial securities issued by the city officials, the consideration of which cannot be inquired into in the hands of a bona fide holder, and which might be issued to an extent involving the financial ruin of the city. It is the latter species of securities for the issue of which no authority can be found in the charter; and the power to issue these is not implied from the ordinary police powers given to a municipal corporation. Mayor v. Ray, 19 Wall. [86 U. S.] 468. In the next place, the charter contains no authority to aid or subscribe for stock in private corporations created for constructing works of internal improvement. The bonds in question were issued for this purpose, as is shown by a printed memorandum in their margin.

A municipal corporation is but a subordinate branch of the government; it represents the state sovereignty in a limited district and for specified purposes. Those purposes are local government and police. The power of taxation is granted as a means of carrying out these purposes. The diversion of these revenues to other purposes is unlawful and ultra vires. If it is desirable that a municipal body should have the power of subscribing to railroads or plankroads, or of issuing commercial securities to be sold in the financial markets, it is time enough for it to do so when authorized thereto by legislation. It possesses no powers but such as are given to it expressly or by necessary implication. These views were recently expressed by the supreme court of the United States in the case of Mayor v. Ray, 19 Wall. [86 U. S.] 468, and substantially the same conclusion was reached by the supreme court of Alabama in the case of Montgomery v. Montgomery & W. Plankroad Co., 31 Ala. 84. The ruinous extravagance and demoralization which have resulted from the possession of unlimited powers of expenditure and issue of bonds by municipal bodies all over the country, evince the wisdom of these decisions. My attention has been called to the charter of the plankroad companies in whose aid the bonds were issued; but I find nothing in them to supply the fundamental defect of want of power to grant the aid and issue the bonds in question. Reference has also been made to an act passed in 1860, authorizing the city council to issue new bonds in the place and in extension of the issues of which the bonds in

suit form a part, provided the owners of real estate resident in the city should vote consent thereto. But the vote was adverse to such reissue, and the law does not, if it could, cure the original defect of power in the issue of the bonds.

The plea that the city is estopped by the acts of its officers, by the resolutions of the city council, or by the negotiable form or other matter in the bonds themselves, from denying the authority of such officers to pledge the faith of the city in aid of said plankroads, and to issue the bonds in question, cannot be maintained. Public officers cannot acquire authority by declaring that they have it. They cannot thus shut the mouth of the public whom they represent. The officers and agents of private corporations, entrusted by them with the management of their own business and property, may estop their principals and subject them to the consequences of their unauthorized acts. But the body politic cannot be thus silenced by the acts or declarations of its agents. If it could be, unbounded scope would be given to the peculations and frauds of public officers. I hold it to be a sound proposition, that no municipal or political body can be estopped by the acts or declarations of its officers, from denying their authority to bind it. The Floyd Acceptances, 7 Wall. [74 U. S.] 666.

Finally the plea that the plaintiffs are bona fide holders of the bonds cannot avail where the defense is want of power to issue them. Of this defect the plaintiffs were bound to take notice. Had the power to issue the bonds existed, and had the question been, whether certain preliminary conditions had been complied with, the plea might, under certain circumstances, have been a good one. No doubt the plaintiffs in these cases are meritorious holders of the bonds; and no doubt there are considerations of equity in their favor; and perhaps it is to be regretted that the citizens of Montgomery did not, in their own vindication, under the act of 1860, vote for a reissue and extension of the bonds. An eminent citizen,[2] who was called upon, nearly twenty years ago, to investigate the rights of the parties holding these bonds, speaking for himself and a committee of which he was chairman, forcibly observed: "That the principles of common honesty, as well as a just regard for the credit of the city, demand that immediate provision should be made for the payment of the interest in arrear," etc., and he further observed: "The committee is aware that the authority of the city council in the issue of these bonds is questionable; that it is doubtful if such issue constitutes any valid legal obligation on the city; but as it was done in accordance with the deliberately expressed wishes of a large majority of the real estate holders of the city, and as they would have derived the prin-

cipal benefit in the increased value of their property, had the enterprise to promote which the bonds were issued proved successful, they do not doubt under such circumstances, that the same property holders who united in recommending the issue and loan will most cheerfully submit to the slight increase of taxation which is proposed." Unfortunately, these anticipations have not, thus far, been realized; and the court, under the view of the law which I have been compelled to take, is powerless to afford relief. There must be a finding and judgment for the defendant.