Newport Hospital *vs.* Agnes B. Ward, T. T.

MARCH 5, 1936.

Present:   Flynn, C. J., Capotosto, Baker, and Condon, JJ.

CAPOTOSTO, J.   This is an action in covenant.   The case is before us on the plaintiff's exception to a ruling of the superior court sustaining a substantial demurrer to all the counts of the declaration.

An examination of the papers discloses that the action is based upon the alleged breach of the covenants of quiet enjoyment and of general warranty contained in a deed,

dated May 19, 1746, from the town of Middletown to Jonathan Easton, which purports to convey Sechewest or second beach, otherwise described as the "commonage," to the grantee therein named. The plaintiff is a successor in title as devisee of John Alfred Hazard.

The declaration is in four counts. The first and second counts are in covenant, the former for breach by the town of the covenant of quiet enjoyment and the latter for breach of the covenant of general warranty. The third and fourth counts are in assumpsit and are joined in the declaration by virtue of the provisions of our statute. The third count proceeds on the theory that as the town has repudiated its deed and has caused it to be declared null and void by this court in the case of *Newport Hospital* v. *Ritchie,* 52 R. I. 485, it was the duty of the town to return to the plaintiff the consideration, with interest, paid for the deed by Jonathan Easton. The damages claimed in this count are the value of the premises and the plaintiff's expenses in defending its title thereto. The fourth count is based on the doctrine of unjust enrichment, and seeks to recover the consideration paid by Jonathan Easton, with interest from the date of the deed to the present time.

With the exceptions just noted the allegations of all the four counts in plaintiff's declaration are substantially the same. They allege that the town of Middletown, acting in its corporate capacity through Edward Easton, town clerk, executed the above-mentioned deed conveying the premises therein described in fee to Jonathan Easton for the sum of two hundred thirty-seven pounds, eighteen shillings; that Jonathan Easton took possession of said premises and that, subject to certain rights of the inhabitants of the town, he and his successors in title occupied said premises under said deed without interference until June 28, 1929, when, because of certain acts of the members of the town council which interfered with its use of the premises, the plaintiff brought a bill in equity, entitled *Newport Hospital* v. *Ritchie, supra,* to enjoin them from

interfering with its use and enjoyment thereof. It then alleges that the said town in its corporate capacity and on its own motion became a party to said cause and filed an answer setting forth that it had no power to convey said premises to Jonathan Easton and that its alleged deed of May 19, 1746, was null and void; and that the final decree in that cause sets forth that "the deed should be and is. hereby declared null and void and said town is hereby declared to be the legal owner of said commonage, in trust for the benefit of the inhabitants of said town and the general public." The declaration further alleges that as a. result of this repudiation of its deed by the town, the plaintiff has been evicted from the premises and has been damaged in the manner and to the extent described in the different counts. A certified copy of the deed is attached to and made a part of the declaration.

The defendant demurred to all four counts in the declara- tion. The grounds of demurrer to each count are minutely and properly set forth. It is sufficient for our purpose to state that all the grounds relied upon by the defendant are based, directly or indirectly, upon the claim (1) that the covenants in the deed of 1746 and the promises, express or implied, that the plaintiff seeks to draw therefrom are not the covenants or promises of the town; (2) that said deed and covenants are *ultra vires*, and (3) that said deed is null and void by reason of the decree in *Newport Hospital* v. *Ritchie, supra*, hereinafter referred to by us as the *Ritchie* case. The trial justice sustained the demurrer to each count in the declaration, whereupon the plaintiff brought. its exceptions to this court.

The principal issue raised by the pleadings and the exhibit. attached to the plaintiff's declaration is the validity of the warranty deed that the plaintiff claims conveyed the premises in question—known either as Sechewest Beach or as Sachuest Beach—from the town of Middletown to. Jonathan Easton in 1746. In determining this question, the form of the deed itself and the decision of the court in

the *Ritchie* case are important. Notwithstanding the recital in the deed that the conveyance is made pursuant to a vote of the town meeting, the grantor in that deed is not the town of Middletown but is Edward Easton who describes himself therein as the town clerk of that municipality; it is not signed by or in behalf of the town, but by "Edward Easton, Town Clerk;" and no seal of the town is affixed thereto, although the deed bears a blank seal opposite the name of the grantor. The *testimonium* clause reads: "In witness whereof, I, the said Edward Easton, Town Clerk, have hereunto set my hand and seal." The covenants of quiet enjoyment and of general warranty are entered into by Edward Easton "for himself and his successors in his said office of town clerk," and not by the town of Middletown in its corporate capacity. In the covenant of general warranty the grantor warrants to defend against himself, "the said Edward Easton" and his successors in said office, and "against all and every other person and persons belonging to Middletown."

The plaintiff's declaration, which relies upon and incorporates this deed by reference, alleges that in 1746 the town of Middletown entered into certain covenants with Jonathan Easton, the benefits of which the plaintiff now claims as his successor in title. Allegations and conclusions in a declaration cannot prevail against the language of an instrument incorporated therein by reference, especially in the case of an ancient document, if such allegations and conclusions are not warranted by a construction of that instrument in accordance with the law applicable thereto at the time of execution.

In support of its contention that the deed as executed was sufficient to bind the town of Middletown, the plaintiff quotes at some length from 43 C. J. 1350, §2112, which begins as follows: "By the common law a corporation could 'act and speak only by its common seal.' And the proper form for a municipal deed or lease is in the corporate name, signed by the mayor, and sealed with corporate seal,

affixed and attested by the recorder or other proper officer duly authorized. But under modern statutes and modern decisions the rigors of the common law have been abated, and much less *now* satisfies legal requirement." (italics ours) It is our intention and purpose to confine ourselves strictly to the circumstances in this case and to determine whether the deed in question was sufficient to bind a municipality under the law in force almost two hundred years ago.

Before the adoption of modern statutes, numerous cases hold that a deed or contract under seal made by an agent does not bind the principal unless it is made in the name of the principal, and that it is not enough for the agent to declare in the instrument that he makes it as the agent for his principal and to add to his signature words expressive of the same thing. This subject was discussed and the authorities reviewed in *City of Providence* v. *Miller,* 11 R. I. 272. In that case the city of Providence brought a bill in equity to enforce specific performance of a contract under seal for the sale of certain land. The contract was between the defendants and Thomas A. Doyle "in behalf of the City of Providence." It was signed by the defendants and Thomas A. Doyle respectively in their own names and sealed with their own seals. In sustaining a demurrer to the bill on the ground that the contract, by the copy annexed to the bill, was not the contract of the city, at page 275, the court says: "The only thing that gives countenance to the claim that the contract is the contract of the city is the expression, 'in behalf of the city of Providence,' which appears nowhere but in the title of the contract. These words indicate that the city is beneficially interested, but they do not make it a party, or entitle it to sue as a party, to the contract."

We appreciate that under certain conditions and irrespective of statute a deed or other sealed instrument may bind the principal however irregular and informal the mode of execution of it by the agent may be. But to warrant

this conclusion, the deed or other sealed instrument must show on its face that it was executed by the principal acting through his agent and not by the agent himself. The form of the *testimonium* clause is of material assistance in determining this question, especially if it states that the principal has thereto affixed his seal. This very question was decided in the case of *Bradstreet* v. *Baker*, 14 R. I. 546, where the plaintiffs sued in covenant for the breach of a contract under seal between the Centennial Ice Company, a co-partnership, by J. S. Bradstreet, Agent, as party of the first part, and the defendants, as parties of the second part. The stipulations contained in the body of the instrument purport to be stipulations between "the said party of the first part" and "the said parties of the second part," no names being given. The *testimonium* clause was: "In witness whereof the parties have hereunto affixed their hands and seals the year and day first above written." It was signed: "J. S. Bradstreet, Agent, (L. S.)" and by the defendants. Notwithstanding this irregular and informal execution by the agent, the court held on demurrer that the contract was the covenant of the Centennial Ice Company. It based its conclusion upon the fact that the operative clauses were in the name of the co-partnership and that the *testimonium* clause stated that the parties, as previously described in the contract itself, had affixed their names and seals, thereby making the first seal that of the co-partnership. The plaintiff apparently attaches no significance to this case and to *City of Providence* v. *Miller*, *supra*, for it fails to even mention them in its brief.

We, however, cannot disregard the import of these decisions, especially when the matter at issue is so distantly removed from modern problems. In the instant case the only contracting party throughout the deed is Edward Easton, town clerk of Middletown; he covenants for himself and his successors in office but not for the town; the *testimonium* clause is in his name as town clerk and the seal is unequivocally described in that clause as his seal; and

Edward Easton, individually and not even as agent, acknowledges the deed to be "his act and deed, hand and seal thereto set." The act does not purport to be the act of the principal, but of the agent. The intent of the parties alone is not sufficient unless it is ascertained from the deed and is executed in such a manner as to possess legal validity. 1 Williston on Contracts, 563, §296; *Sterling* v. *Peet*, 14 Conn. 245; *Lessee of Clarke* v. *Courtney*, 5 Pet. 319, 349. We, therefore, find that the covenants declared upon were not the covenants of the town of Middletown.

The plaintiff further argues that the validity of the deed now in question was determined in *Middletown* v. *Newport Hospital*, 16 R. I. 319; that therefore it is *res judicata* and no longer an open question. It construes that decision to hold that, as between the plaintiff and the defendant, the deed and covenants are the deed and the covenants of the town. We do not agree with such a construction of that decision.

In a separate and distinct instrument, coincident with the original deed of May 19, 1746, Jonathan Easton, for himself, his heirs, executors, administrators and assigns, executed a bond to the town treasurer of Middletown conditioned upon "granting and allowing forever to the inhabitants of the town certain privileges of entry and passage and of collecting and asporting sand, seaweed, shells and drift stuff from the premises described in the deed to him of even date." It was this bond and not the deed that was in issue in *Middletown* v. *Newport Hospital*, *supra*. In that case the town sought equitable relief against the attempted breach of the bond by the Newport Hospital. The court in its opinion, after stating that the execution of the deed was questioned in a former cause, *assumed its sufficiency* "for the purposes of this suit," and continues: "On the death of Jonathan Easton all his realty, including the beach, passed by devise to his son Nicholas, who died intestate A. D. 1812. Subsequently, *whatever title to the beach passed by devise to said Nicholas* (italics ours) became

vested in the late John Alfred Hazard, a descendant of said Nicholas, who at his death, A. D. 1880, devised it to the defendant." The court then turns to the allegations in the bill of complaint and continues: "The bill also shows that from May 19, 1746, the day the deed and bond were executed, to the year 1877, a period of one hundred and thirty years, the inhabitants of the complainant town have exercised and enjoyed the liberties and privileges freely and without molestation; but that in 1877 said Hazard, pretending that the bond was void, brought certain suits in trespass against some of the inhabitants for 'asporting seaweed and sand from the said beach,' and that since his death the defendant, making the same pretences, has brought like suits and threatens to bring suits against any person resident in Middletown who takes sand and seaweed from said beach." After an extended discussion of the numerous objections raised by the respondent, the court says: "The bond was an essential part of the transaction by which the beach passed to Jonathan Easton and entered into the very texture of his title. . . . It seems to us to be just and equitable in the highest degree that the defendant, the present owner, should be required to allow the inhabitants of Middletown the rights and privileges secured by the bond in the same manner as Jonathan Easton could himself be required to allow them if still living, and we will enter a decree against the defendant accordingly."

The assumption by the court in that case of title to the beach in the Newport Hospital, for the purpose of determining its obligations to the inhabitants of the town of Middletown under a separate and distinct instrument from the deed in the chain of title, cannot be turned into a decision confirming the validity of any title originally vesting in Jonathan Easton. So long as Jonathan Easton and his successors in title were permitted to enjoy "whatever title to the beach" passed by the original deed, justice and equity demanded that they perform the independent

obligations which they assumed at the time of the original deed. Rather than an approval of the original deed of 1746 to Jonathan Easton, we perceive in the tenor of that decision a serious doubt in the court's mind as to its validity. The plaintiff, however, contends that under the decision in *Middletown* v. *Newport Hospital, supra*, the validity of the deed itself is *"res adjudicata"* between the parties, and urges this contention notwithstanding the decision in the *Ritchie* case, *supra*, decided by this court in 1932. In that case the same counsel who now represent the petitioner brought a bill of complaint in behalf of the Newport Hospital and one Voigt to enjoin the members of the town council, chief of police and constables of the town of Middletown from interfering with the complainant Voigt, a lessee from the Newport Hospital, who was obstructing entrance to the beach and was preventing the enjoyment thereof by the public generally in the parking of automobiles, bathing and other legitimate uses, unless payment was made for such privileges. In that case the town of Middletown, and the attorney general, representing the state and the public, were made parties defendant on their own motions. When the complainants' title was questioned and directly put in issue, counsel claimed then, as they do now, that the validity of the deed to Jonathan Easton was *"res judicata"* by reason of the decision in *Middletown* v. *Newport Hospital, supra*. The court, after deciding that the question involved was not *res judicata* "as to the public," adopted the finding in *Cascambas* v. *City of Newport*, 45 R. I. 343, and held that the Newport Hospital and its lessee had "shown no right to exclude the public from the land which, since 1714, they have used and may continue to use until deprived thereof by act of the legislature."

In the instant case, the plaintiff attempts to explain and limit the force of the decision in the *Ritchie* case by arguing that the court in the latter case simply declared the original deed of 1746 to Jonathan Easton null and void in so far as the transfer of title affected the rights of the inhabitants

of the town, but that it did not affect any rights then or thereafter existing between the town as a corporation in its private capacity and the grantee and his successors in title. In brief, the plaintiff's contention now is that when the town of Middletown executed the deed in question to Jonathan Easton it was acting in its private corporate capacity and not as a trustee for the public, so that any decision which determined the public right in the premises cannot affect the validity of an act done by the town in its proprietary capacity. This argument is ingenious but unsound. It is quite true that a town may hold property in one of two capacities: either as a private owner of property not dedicated to the public and in which it, as a town, alone is interested, or, as a trustee for the public, if the property is dedicated to the public use. A town cannot hold title to the same property in both capacities at the same time. When it acts in reference to any specific property in its control, a town can only act as to that property in a capacity consistent with its holding.

The plaintiff's contention leads us to inquire in what capacity the town of Middletown held the property set out in the original deed to Jonathan Easton. In 1714, these premises were unallotted lands belonging to the town of Newport. At a meeting of the freemen of that town, held on April 28, 1714, it was voted that all vacant and un-allotted lands in the town should be laid out as a perpetual common. These lands were thereafter known as the "commonage." In 1743, a certain portion of Newport, including the land in question, was set off as the town of Middletown. The deed to Jonathan Easton followed in 1746. The details of this bare historical outline of the premises in the case at bar are fully set out in the cases which we have already mentioned. In *Middletown* v. *Newport Hospital, supra*, at page 337, the court indicates its opinion of the character of the plaintiff's title to the beach when it says: "As we have seen, the beach came to the town under a vote of the proprietors to relinquish 'all their

rights and title in the common land on Sachuest Beach, to be by said town managed from time to time, *forever*, hereafter, *as an estate belonging to said town.*' The town, having accepted the grant, ought, acting in good faith, to have kept the beach; and doubtless, it intended, when it sold the beach, to carry out the purpose of the proprietors by requiring the bond." This *dictum* shows that, even in that early case upon which the plaintiff now so strongly relies, the court felt that the town of Middletown held the premises as a trustee for the public rather than in any private corporate capacity.

In *Cascambas* v. *City of Newport*, *supra*, the city's title to Easton's Beach was in issue. Easton's Beach and the premises in the instant case were all part of the unallotted lands that were dedicated to the public use by the freemen of Newport in 1714. At page 345 and 346 of that opinion, the court says: "It cannot be questioned that the city of Newport holds title to Easton's Beach in some manner. The respondents claim that the city does so in a purely corporate capacity, having the same power as a private corporation or a private individual to lease or otherwise use and dispose of it. . . . The contention of the complainants is that . . . the city of Newport holds title to the beach as a governmental agent, merely, in trust for the benefit and enjoyment of the public, and that the city is without power to dispose of the beach or to make the lease in question." The court then proceeds to consider various deeds in the early chain of title, and, in sustaining the complainants' claim, at page 348, says: "We conclude that the city of Newport as successor to the town of Newport holds title to the beach in trust for the benefit of the inhabitants and the public, to be used by them in the manner and for the purposes for which in the circumstances, and in accordance with the times, the beach is adapted." There is no doubt that this case clearly holds that, in so far as Easton's Beach is concerned, the city of Newport holds that beach as a governmental agent in trust for the public, and

can deal with it only when acting in that capacity and none other.

The next case in this inquiry is the *Ritchie* case, *supra*, which the plaintiff now tries to limit and explain. The complainants in that case were not parties in *Cascambas* v *City of Newport, supra,* and consequently were not bound by that decision. Yet the court, in the *Ritchie* case, reaches the same conclusion. At page 488, it states the issue as follows: "The fundamental question which must first be answered is whether Jonathan Easton's grantor, the town of Middletown, had a title legally sufficient to warrant the conveyance of the rights contained in the deed to Easton, upon which rests the title of the Newport Hospital and that of its lessee." And, at page 491, the court decides that issue and says: "Our conclusion as to the principal question —whether the grantor of the commonage to Easton had legal authority to make such conveyance—is that the finding in the *Cascambas* case applies to the instant case and that neither Newport Hospital nor Otto Voigt, the lessee, have the right in any manner to interfere with the public in the use of land which as commonage has been dedicated to them."

These three cases show, and the last one actually decides, that the town of Middletown in 1746 held title to the premises it attempted to convey to Jonathan Easton as a governmental agent in trust for its inhabitants and the public generally, and not in its private proprietary capacity. It is generally accepted law that a municipal corporation which holds property devoted to a public use has no power, without legislative authority, to sell and convey such property. 19 R. C. L. 772, §78. This rule was followed in both the *Cascambas* and the *Ritchie* cases. We are in entire accord with the conclusions reached in those cases. We consider as specious the plaintiff's claim that, inasmuch as the *Ritchie* case does not overrule the decision in *Middletown* v. *Newport Hospital, supra,* the deed now in question is to be considered a valid grant as between the parties.

The two cases are entirely consistent with each other. · In *Middletown* v. *Newport Hospital, supra,* the court was concerned solely with the obligation of Jonathan Easton and his successors under Jonathan Easton's bond to the town; in the *Ritchie* case, the court was called upon to determine what, if any, title was conveyed by the town of Middletown to Jonathan Easton by the deed of 1746. There was no reason for questioning and much less for overruling the decision in the former case in deciding the issue in the latter case. The *Ritchie* case, which adopts and applies the finding in the *Cascambas* case, clearly holds that the deed from the town of Middletown to Jonathan Easton was an abortive act. We agree with that finding.

To support the counts in assumpsit, the plaintiff claims that the town of Middletown is estopped to deny the validity of its deed and covenants, and argues that the law of estoppel applies to a municipal corporation precisely as it does to a natural person in all things pertaining to the proprietary rights of such corporation. This argument is untenable in this case because its premise does not exist in fact. The town had no proprietary rights in the commonage, but held those premises in its capacity of a governmental agent in trust for the public. If it had no power to convey the property in that capacity, and we have found in this case that it had no such power, any attempted dealing in reference thereto in any other capacity was *ultra vires* and wholly void. Under such circumstances a municipality is permitted to set up its own incapacity in order to protect the public against acts previously attempted without the warrant or color of authority.

One who deals with a municipal corporation is bound to take notice of the extent of its powers. The protection of such corporation from the unauthorized acts of its officers and agents is a matter in which the whole community is concerned. · In *Austin* v. *Coggeshall,* 12 R. I. 329, at page 332, the court says: "It is well settled that a municipal corporation, when sued directly on a contract which it is

incapable of making, cannot be estopped from taking advantage of its incapacity because the party suing has acted on the contract in good faith, supposing it to be legal, for the reason that any person who contracts with such a corporation, which is a creature of public law, is bound at his own peril to know the extent of its capacity." *McAleer* v. *Angell*, 19 R. I. 688, 694; *McTwiggan* v. *Hunter* 19 R. I. 265; *Thomas* v. *City of Richmond*, 12 Wall. 349.

Another consideration which the plaintiff overlooks in his argument on this point is the distinction between a case where a municipality is acting within its general corporate powers, but the particular act is void on account of some defect in the execution of the power, and a case where the act in question is void because it is entirely beyond its corporate powers under any circumstances. In cases of the former class, the municipality is generally held liable for such benefits as it may have received in the course of the transaction, while in cases of the latter class, no recovery is permitted from the municipality for the value of benefits received. 3 McQuillan on Municipal Corp., (2d. ed.) 978, §1365; 43 C. J. 1351, §2117; *Bloomsburg Land Imp. Co.* v. *Bloomsburg*, 215 Pa. 452; *First National Bank* v. *Village of Goodhue*, 120 Minn. 362; *Turner Invest. Co.* v. *City of Seattle*, 70 Wash. 201; *Valley Falls Co.* v. *Taft, T. T.*, 27 R. I. 136; *Pocasset Ice Co.* v. *Burton, T. T.*, 35 R. I. 57. In the two last cases this court allowed recovery against a town upon an implied contract because it first found that the municipality had general power to contract with reference to the subject-matter of an express agreement, not violative of any public policy, which was invalid for some irregularity in the execution thereof. The numerous authorities which the plaintiff cites and at times extensively quotes from are found on examination to belong in this category, and therefore not in point. The instant case is not of that type. It does not present the question of a defective execution of an existing power, but rather the doing of an act completely beyond any power which it

possesses. Not only was the attempted conveyance of land dedicated to the public *ultra vires* in the strict sense of those words, but it was also clearly against public policy, since it was a breach of the trust under which the town held the land for the benefit of the public.

The plaintiff refers us to paragraph eight of the final decree in the *Ritchie* case which reads: "This decree is entered without prejudice to the rights, if any there be, of any of said parties in any other proceeding, legal or equitable, to collect money or damages from any other of said parties, by reason of said deed being declared null and void or by reason of the use of said commonage in the past, or by reason of the collection of parking fees in the past." It then argues that this reservation of rights, "if any there be," incorporated as it is in a decree approved by this court, limits the scope of the written opinion in that case so that the plaintiff may now sue in assumpsit for the loss of the land. In view of this contention, we feel at liberty, inasmuch as the plaintiff has brought the decree in that cause to our attention, to quote paragraph three of that decree which says: "That said town of Middletown never had any right to sell or convey said commonage without authorization or ratification of the General Assembly of this State, which authorization or ratification was never given; that the attempted sale of said commonage by said Town to said Jonathan Easton by said deed, without such authorization and ratification, was a breach by said Town of a public trust; and that therefore said deed should be and is hereby declared null and void and said Town is hereby declared to be the legal owner of said commonage, in trust for the benefit of the inhabitants of said Town and the general public." We need only to reaffirm what we have already stated, that the *Ritchie* case holds the deed of May 19, 1746, from the town of Middletown to Jonathan Easton, null and void to all intent and purposes. An independent investigation leads us to the same conclusion for the reasons we have hereinbefore fully set forth.

The demurrer to each one of the four counts in the plaintiff's declaration was properly sustained by the trial court.

The plaintiff's exceptions are overruled and the case is remitted to the superior court for further proceedings in accordance with this opinion.

*William R. Harvey, J. Russell Haire, Sheffield & Harvey* for plaintiff.

*John C. Burke, Harry A. Tuell,* for defendant.