312 A.2d 209.

VALLEY VIEW TENANT'S ASSOCIATION *et al. vs.*
JOSEPH A. DOORLEY, JR. *et al.*

NOVEMBER 26. 1973.

PRESENT: Roberts, C. J., Joslin, Kelleher and Doris, JJ.

JOSLIN, J. Valley View Tenant's Association (hereinafter "association") is a nonbusiness corporation of public housing tenants. It commenced this civil class action in the Superior Court on its own behalf and on behalf of the residents of the Valley View Housing Development (hereinafter "development"), a housing project which is located in the city of Providence (hereinafter "city"). The defendants are the city's mayor and council, and the Providence Housing Authority (hereinafter "authority"), its executive director and its board of commissioners.

The plaintiffs complain that the Committee on City Property, a standing committee of the city council, has publicly advertised the development for sale, that it has solicited and opened bids therefor, and that it intends to sell the property to a private developer who will so increase the rents that many of the tenants, lacking the means to pay the increases, will be forced to move. To prevent the sale, plaintiffs ask that defendants be enjoined "from accepting any bid for the purchase of Valley View Housing Development."

After a hearing on the merits a trial justice, sitting without a jury, denied injunctive relief. The plaintiffs appealed, and pending hearing thereon we enjoined sale of the development. The plaintiffs also petitioned for a writ of certiorari and we, not then being as aware of the facts and travel of the case as we now are, ordered the writ to

issue, 112 R. I. 905-06, 307 A.2d 781 (1973).

We have since heard the arguments and examined the briefs as well as the record in the case, and are now satisfied that their pending appeal affords plaintiffs an adequate and expeditious remedy for obtaining review of the judgment. Accordingly, the writ of certiorari previously issued is quashed as improvidently granted and we consider only plaintiffs' appeal.

We start that consideration with an examination of the enabling legislation pursuant to which the project was constructed and commenced operations.[1] It was enacted shortly after the end of World War II when a housing shortage was creating widespread distress among the thousands of veterans and servicemen who, together with their families, were returning to this city. Responding to that emergency, the Legislature declared in P. L. 1946, ch. 1750 that to provide accommodations for the homeless was a "public use and purpose" and a "governmental function." It empowered the city and the authority, in pursuit of this declaration, to issue general obligation bonds, spend public money, acquire private property by condemnation, incur public debt and levy taxes.

Soon thereafter, the then governor of this state requested the justices of this court to advise him whether the Legislature had acted within constitutional limitations when it authorized the city to engage in the housing business. The justices, responding in the affirmative, stated that the grant of power in ch. 1750, "being temporary in nature and limited in time and scope to an exigent public necessity in a declared emergency, comes within the proper exercise of the police power of the state," and "that the expenditure of public money in the manner and to the extent specified * * * constitutes an expenditure of money

---

[1]That legislation is P. L. 1946, ch. 1750, as amended by P. L. 1947, ch. 1859, P. L. 1948, ch. 2069 and P. L. 1950, ch. 2577.

for a public purpose." *Opinion to the Governor,* 75 R. I. 54, 64, 63 A.2d 724, 730 (1949).

In due course and while that "exigent public necessity" continued, the development was completed, title was vested in the city, and the authority was appointed and began to operate it. We have not been told whether the declared emergency which was responsible for its creation continues to exist, but we are asked whether the city may now, over a quarter of a century since the enactment of ch. 1750, dispose of the development which presently comprises 64 buildings containing 256 housing units.

For the answer, we turn to the statutes, it having long been judicially settled in this state that a municipality lacks inherent power to divest itself of property once actually devoted to a public use, and may not do so without the specific authorization of the Legislature. *Buckout* v. *City of Newport,* 68 R. I. 280, 289, 27 A.2d 317, 322 (1942); *Newport Hospital* v. *Ward,* 56 R. I. 45, 57, 183 A. 571, 577 (1936).

Probably as a reaction to *Buckout, supra,* the General Assembly, in what is now G. L. 1956 (1970 Reenactment) §45-2-5, explicitly authorized the city council of any city and the town council of any town to dispose of any lands or properties "purchased, acquired, used or dedicated in any manner for municipal or other public purposes, whenever, in the opinion of [its governing body], said lands or properties have become unsuitable or have ceased to be used for such purposes."

While the sweep of that grant is broad, the discretion conferred is not unfettered, and the precondition imposed upon any disposition of municipal property affected with a public purpose are clear and unequivocal: lands or property cannot be disposed of unless the city or town council, as the case may be, shall have first determined that, in its opinion, they have "become unsuitable or have ceased

to be used for such purposes." *See generally Thompson* v. *Sullivan,* 88 R. I. 305, 148 A.2d 130 (1959); *Ravenelle* v. *City of Woonsocket,* 73 R. I. 270, 54 A.2d 376 (1947).

Plaintiffs contend that in this case the preconditions have not been satisfied. That is so, but so far as we have been advised, neither prior to the commencement of this action nor since has the bidding process culminated in an accepted bid for, or disposition of, the development. Thus, we will never know whether the city council would have accepted that bid[2] and concomitantly complied with the preconditions. Moreover, only time will tell whether the city will in the future revive its existing plan for the disposition of the development or adopt a new one.

In the interim, plaintiffs point to nothing which warrants the relief they seek, *viz.,* an injunction against defendants from accepting a bid for the purchase of the project. That plaintiffs may have been premature in commencing this action before the city council acted should not, however, preclude them from urging noncompliance with the §45-2-5 preconditions as a ground for a future challenge. We are, after all, in an area in which a city, if it disposes of this kind of property without complying with the preconditions, exceeds its power and cannot convey a good title. *Newport Hospital* v. *Ward, supra* at 59-60, 183 A. at 577-78.

The plaintiffs' appeal is denied and dismissed, the judg-

---

[2]The city charter of Providence, P. L. 1866, ch. 598, sec. 9, cl. 13, provides:

"The city council * * * shall have * * * the custody and management of all city property, with power to * * * sell what may be legally * * * sold * * *."

No statute or ordinance providing otherwise or delegating the power to sell has been brought to our attention. In addition, the advertisement soliciting bids, a copy of which appears as an exhibit to the complaint, requires that the recommended bid be approved by the city council and the mayor.

ment appealed from is affirmed, and the injunction entered by this court is vacated.

Mr. Justice Paolino did not participate.

*Walter R. Stone,* for plaintiffs.

*Louis A. Mascia,* City Solicitor, *Ronald H. Glantz,* Deputy City Solicitor, for defendants.