WILLIAM M. AUSTIN *et al. vs.* DAVID M. COGGESHALL, City Treasurer of the City of Newport.

A clause in a city charter provided that "nothing in this charter shall be construed . . . . as giving power to vote money for any object except for the regular ordinary and usual expenses of the city."

This clause being in force the city council resolved to give a ball and banquet in honor of certain strangers. The resolution of the council and the preparations for the ball were well known, and September 9, 1878, the ball took place. September 27, 1878, certain tax-payers of the city prayed that the city treasurer might be perpetually enjoined from paying the bills incurred.

*Held,* that the injunction must issue.

*Held,* further, that neither the fact that the city authorities had without objection given a similar ball in 1875, nor that the complainant tax-payers had waited till the expense had been incurred before filing their bill of complaint, nor that the caterers had acted in good faith and must suffer if the injunction issued, could be urged by the respondent treasurer against the prayer of the bill.

*Held,* further, that one who contracts with a municipal corporation is bound at his own peril to know the limits of municipal authority.

BILL IN EQUITY praying for an injunction. The facts involved are stated in the opinion of the court. The clause of the charter of the city of Newport referred to is :

"Nothing contained in this charter shall be construed either as giving the city corporation any banking privileges or the power to subscribe to any railroad, canal, or any public work whatever, or to do and transact any matter, except such as belongs to the legitimate duties of a municipal body within its own province, or as giving power to vote money for any object except for the regular ordinary and usual expenses of the city."

*Providence, April* 12, 1879. DURFEE, C. J. In the summer of 1878, the Bellerophon, under the command of Vice-admiral Inglefield, with two other British ships of war, visited Newport harbor, remaining from August 28 until after September 9. On their arrival the city council of Newport appointed a committee to arrange an entertainment for the officers. Accordingly a ball and banquet were given at the Ocean House, September 9, at a cost of about $2,950, invitations being extended to some twelve hundred citizens as well as to the officers. It is alleged, by way of apology for the city council, that on a similar visit in 1875 a similar entertainment was given without objection from anybody, and that the presence of the vessels drew crowds of visitors to the city to the considerable emolument of the citi-

zens. The resolution to give the entertainment was so notorious that it must be presumed to have been known at once to the complainants, who were residents in Newport, and who nevertheless took no legal steps to prevent the entertainment. The answer alleges that the committee of arrangements acted in good faith, believing their action was legal. It also alleges, what appears to have been the fact, that the entertainment was provided on the credit of the city by persons who had no connection with the city government and who honestly believed that the committee had power to contract for the city. These persons remain unpaid. This suit was commenced September 27, 1878, by certain tax-payers of the city of Newport. The bill prays for an injunction to restrain the defendant, who is the city treasurer of the city of Newport, from paying the cost of the entertainment out of the treasury, it being anticipated that an order for the payment may be given by the city council.

The bill sets forth a clause of the charter of the city of Newport, which declares that nothing in the charter shall be construed " as giving power to vote money for any object, except for the regular ordinary and usual expenses of the city."

The defendant concedes that the city council had no authority to contract or to empower the committee to contract for the entertainment in the name of the city, and rests his defence solely on the ground that the complainants have forfeited all claim to equitable relief by their laches in waiting until after the entertainment had been given before bringing the suit. He cites in support of this position the case of *Tash* v. *Adams*, 10 Cush. 252, in which the Supreme Judicial Court of Massachusetts refused to enjoin the payment of money illegally appropriated for the celebration of the second centennial anniversary of the settlement of a Massachusetts town, because of such laches on the part of those by whom the injunction was asked. " With a full knowledge of the vote of the town and the proceedings of the committee," says Mr. Justice Bigelow, in delivering judgment, " they, *i. e.* the petitioners, permitted contracts to be made, and expenditures to be incurred, not only by the committee, but by third parties, who acted in good faith, relying on the credit of the town. They took no measures to enforce their rights until after the celebration had taken place, and innocent parties had

come under liabilities, which they would not have assumed if the petitioners had seasonably sought redress for the impending grievance. To issue an injunction restraining the payment of the bills thus incurred would be manifestly most inequitable ; " and see *Fuller* v. *Melrose*, 1 Allen, 166, in which *Tash* v. *Adams* is affirmed.

We do not see any material distinction between *Tash* v. *Adams* and the case at bar, and therefore, if *Tash* v. *Adams* is good authority, the bill in the case at bar must be dismissed. We do not think it can be followed as authority. The object of this suit is to restrain the defendant as a city treasurer from making an illegal payment out of the treasury. The defendant admits the illegality of the payment, and therefore he virtually admits that the complainants are only seeking to have him enjoined from doing what it is his duty to refrain from doing without injunction. His only objection to the injunction is, that the complainants have forfeited their claim to it by their laches. But toward whom have they been guilty of laches ? Not toward the defendant, and not towards the city, for which the defendant acts. The injunction will not hurt the defendant. It will benefit the city. The laches, if laches they can be called, are laches toward certain persons, not parties to the suit, having an illegal claim on the treasury. The defendant is seeking to protect them at the expense of the treasury, when it is his duty to protect the treasury against them. For the court to refuse to enjoin such a dereliction of official duty looks very much like conniving at it. The defence would be more meritorious if the persons in whose behalf it is interposed had any claim on the city for value received. But they have none. The city neither danced at the ball nor feasted at the banquet. It got nothing substantial out of them. If the city's money goes to pay for them, it will go to pay for what the city neither bargained for nor enjoyed. And again, the defence would appeal more forcibly to the consideration of the court if the complainants had taken any part in procuring the entertainment to be given. But they did not. Their only fault is the passive one of having delayed their suit. And, in this connection, it is to be borne in mind that the complainants, though they sue alone, do not sue for themselves alone, but for themselves in common with all other Newport tax-payers,

and though they may have been guilty of dilatoriness, there are doubtless numerous other tax-payers who by reason of absence, sickness, infancy, or imbecility, are entirely innocent in that regard. The defendant represents the entire city, these innocent tax-payers included. It is his duty to defend, not betray, their interests, and the court ought not to countenance a defence which amounts to a betrayal of them.

The case may be considered in still another light. It is of the essence of the defence that the persons who furnished the entertainment acted in good faith, being ignorant that the city was incapable of contracting for it. If they knew the city was incapable of contracting for it, the defence falls to the ground. But was it not their duty to know it? And can the court entertain the supposition that they did not know it? It is well settled that a municipal corporation, when sued directly on a contract which it is incapable of making, cannot be estopped from taking advantage of its incapacity because the party suing has acted on the contract in good faith, supposing it to be legal, for the reason that any person who contracts with such a corporation, which is a creature of public law, is bound at his own peril to know the extent of its capacity. Dillon Municip. Corp. § 381; *Weismer* v. *Village of Douglas*, 64 N. Y. 91; *Thomas* v. *City of Richmond*, 12 Wall. 349; *Town of South Ottawa* v. *Perkins*, 4 Otto, 260; *Chisholm* v. *City of Montgomery*, 2 Woods, 584; *Bradley* v. *Ballard*, 55 Ill. 417. This rule has been applied in cases where there was much more reason for supposing the contract to be legal than in the case at bar, for in the case at bar the illegality is so evident that the slightest inquiry would have discovered it. Under this rule, if the persons who furnished the entertainment were suing the city of Newport for their pay for it, they could not be heard to urge in support of their claim that they had acted in good faith, being ignorant of the incapacity of the city. But if they could not be permitted to make such a plea for themselves in a suit of their own, upon what principle can the defendant be permitted to make it for their advantage in a suit to which they are not parties? We think it is very clear that he cannot be permitted to do it.

Of course we regret the predicament in which the furnishers of the entertainment will find themselves in consequence of this

decision. We trust, however, that their fellow-citizens will not leave them without assistance.

We direct that the injunction be made perpetual.

*Perpetual injunction ordered.*

*A. & A. D. Payne* and *William Gilpin,* for complainants.

*Francis B. Peckham, Jr.,* City Solicitor of the city of New-port, for respondent.