## Michael E. McAleer *vs.* Frank C. Angell, Town Treasurer.

A double plea is one which consists of several distinct and independent matters alleged to the same point and requiring different answers. Several matters may be introduced into a plea if they be constituent parts of the same entire defence.

It is the imperative duty of municipal corporations to so manage their affairs as to keep within the debt limit prescribed by the legislature.

A judgment against a town for damages resulting from defective highways, although a debt, is not within the provisions of a statute limiting the indebtedness of the town, as the prohibition of such statute is against debts voluntarily incurred in the ordinary manner. Such judgments may be enforced by the court ordering the levy, and collection of a special tax to pay the same, and which may be done without increasing the town debt.

Conditional or statutory limitations upon the power of a municipal corporation to enlarge its indebtedness are to be strictly construed, and render all contracts made in violation thereof absolutely null and void.

Persons dealing with a municipal corporation, or its officers, are bound to enquire into the power of the municipality or its agents to make the contract or do the act in question. And such municipality is not estopped from taking advantage of its incapacity.

A town council cannot bind the town by ratifying a contract illegally entered into by an officer or agent of the town.

But when a town, having reached its debt limit, enters into contracts for which
  the necessary money is provided, such contracts are not within the prohibition
  of the statute.
Pub. Stat. R. I. cap. 34, § 17, construed.

ASSUMPSIT to recover for stone furnished the town of North
Providence.   Heard on demurrer to defendant's special plea
in bar.

*January* 16, 1897.   TILLINGHAST, J.   This is assumpsit to
recover the sum of $172.80 for certain stone furnished to the
town of North Providence for highway purposes.

In addition to the general issue, the defendant has filed a
special plea in bar, in which he sets up that the plaintiff
ought not to have and maintain his action because at the
time of contracting said debt the said town had incurred
debts to the limit allowed by law, and also that there was no
money in the hands of the defendant town treasurer at that
time, nor has there been any money in his hand at any time
since then, with which said debt could have been paid.

To this plea the plaintiff demurs on the grounds : (1) That
it is bad for duplicity ; (2) that the fact that the town had
reached its debt limit is not a good defence, because the duty
of the town to keep its highways in repair is a statutory one,
and is not suspended by reason of the fact that the town had
reached its debt limit ; (3) because, as the town council of
said town, on October 22, 1894, allowed the plaintiff's claim
and ordered it paid, the town is estopped from denying the
validity thereof.

We do not think the plea is bad for duplicity.   A double
plea is one which consists of several *distinct and independent*
matters alleged to the same point and requiring different
answers.   Gould's Pleading, p. 420.   But this rule is not
violated by introducing several matters into a plea if they
be constituent parts of the same entire defence.   1 Chit. p.
512 ;   *Handy* v. *Waldron*, 18 R. I. 567.   Without the alle-
gation objected to in the plea before us it would not state a
full defence to the action, and hence would be demurrable
because notwithstanding the fact that the town had reached
its debt limit when this bill was contracted, yet there might

have been money in the treasury at that time which had been specially set apart for the payment of claims like the one in suit ; and if the town had the means in its treasury to meet this indebtedness, or would have it in anticipation of its current revenue, the contracting of the liability, even though the town then was up to its debt limit, would not be a violation of the statute.   Dill. Mun. Cor. 4 ed. § 135 ; *Dively* v. *Cedar Falls*, 27 Ia. 227 (232) ; *Barnard* v. *Knox County*, 105 Mo. 382 (391).

The second ground of demurrer is clearly untenable, as there is nothing on the record to show that the stone in question was procured for the purpose of making necessary repairs on the highways.   The bill sued on simply shows at the most that the stone was intended to be used on the highways, but for what purpose does not appear.   But even assuming that it was to be used in repairing the highways, yet we do not see that under the facts set up in the plea the town is liable therefor.   Pub. Stat. R. I. cap. 34, § 17, provided as follows :

"No town shall incur any debt in excess of three per centum of the taxable property of such town, including the indebtedness of such town on the tenth day of April, one thousand eight hundred seventy-eight, but the giving of a new note or bond, for a preëxisting debt, or for money borrowed and applied to the payment of such preëxisting debt, is excepted from the provisions of this section, and the amount of any sinking fund shall be deducted in computing such indebtedness."

The same statute is reënacted in the revision of 1896, with the addition, after the word "shall" in the first line, of the words "without special statutory authority therefor."

Since the revision of 1872, we find that the General Assembly has passed a special act entitled, "An act to authorize the town of North Providence to incur a debt in excess of three per cent. of the taxable property and to issue bonds," the same being Pub. Laws R. I. cap. 1146, passed June 15, 1892.   Section 1 of that act is as follows :

"The town of North Providence is hereby given authority

to incur a debt not in excess of five per cent. of the taxable property of such town."

The language of these acts is plain and comprehensive. The former prohibits the incurring of *any debt* in excess of three per centum, subject to the exceptions mentioned, while the latter simply increases the limit from three to five per centum as to this particular town ; and it is too plain for argument that these provisions have the effect to restrict the debt-contracting power to the limits expressed. The town sets up in its plea that its limit was reached at the time the debt in suit was incurred, and the demurrer admits the truth thereof. So that, as the case stands on the record, the defendant town was in debt to the extent of at least five per centum of all its taxable property at the time this obligation was sought to be incurred.

But it is argued that, as the statute imposes upon towns the duty of keeping their highways in repair, and makes them liable for damages sustained by reason of the highways being out of repair, a debt necessarily incurred in the discharge of said duty is a compulsory obligation or a debt created by law, and hence binding, notwithstanding said statute.

To this argument it would perhaps be enough to reply, that in case the town in its corporate capacity failed to make the necessary provision for repairing its highways, the statute in force when this debt was contracted provided another mode by which it might have been accomplished without the incurring of any additional debt. See Pub. Stat. R. I. cap 65, § 10.

But, even independently of this provision, we fail to see how the town has any authority to incur any indebtedness in excess of the aforesaid limit. It is true that in a certain sense all town debts may be said to be created by law, and hence compulsory because the town has no authority to incur any debt except as such authority is conferred upon it by law ; and while the duty is devolved upon it to keep its highways in repair, provide for its paupers, and do many other things requiring the expenditure of money, still it is governed by the statute in the performance of all these duties,

and must keep within the limits prescribed thereby or else the statute is rendered inoperative and of no avail. In short, it is the imperative duty of municipal corporations to so manage their affairs as to keep within the debt limit prescribed by the legislature.

If it be argued that to hold that a town is not liable for any debt in excess of the said limit might nullify its statutory liability for damages resulting from defective and unsafe highways, it is enough to reply that we do not think a judgment against a town in a case of that sort, although a debt, could be properly said to be a debt incurred under the provisions of the statute above quoted, the prohibition evidently being against debts voluntarily incurred in the ordinary manner. Such has been repeatedly held to be the law elsewhere. See *Thomas* v. *Burlington*, 69 Ia. 140 ; *Lewis* v. *Widber*, 99 Cal. 412 ; *Bloomington* v. *Perdue*, 99 Ill. 329. Moreover, the statute provides a special method of enforcing judgments against towns, (Gen. Laws R. I. cap. 36, §§ 13, 14,) in case the town treasurer has not sufficient funds in his hands to pay the same, viz.; by the court ordering the levy and collection of a tax to pay the judgment. So that, even in case of such a judgment against a town which is up to its debt limit, it could be paid in the manner provided, without increasing the town debt.

We are aware of the fact that to hold that a town which has reached its debt limit is incapable of contracting any additional indebtedness may so cripple it for the time being as to seriously interfere with the management of its municipal affairs, and while it is proper for the court to take into account the consequences which may result from its decision in a doubtful case, yet where the law is plain and unambiguous no such consideration can be allowed to have weight in the determination of the question. It is the plain and imperative duty of the court to declare the law as written, leaving it to the General Assembly to make such changes as new circumstances may require. Cooley Con. Lim. 5 ed. 67.

The purpose in view in the passage of the act of 1878, fixing the debt limit aforesaid, was undoubtedly to check

municipal expenditures and extravagance, which even then were becoming burdensome, and which have since assumed much larger proportions ; and to hold that a town can disregard the judicious limitations of the act would be to invite the evils which the statute was clearly intended to prevent. "Such limitations," says Judge Dillon, "have been found by experience to be necessary to prevent extravagance, are remedial in their nature, are based upon the wise policy of paying as you go, and ought therefore to be construed and applied to secure the end sought." In *Read* v. *Atlantic City*, 49 N. J. L. 558, the court says : "The plain object of such restrictions is to require that all moneys which are to be paid for municipal expenses, after the debt has reached the fixed limit, shall be raised by taxation. In view of this object, it is clear (and all the cases agree in this) that prohibitions against increasing the indebtedness, or the debt, of a municipality are not to be construed as limited to obligations which are debts *eo nomine*, but are to be extended to all contracts for the payment of money or contracts whereon the payment of money may be enforced. But where the money to be paid upon such contracts is provided for, to be raised by taxation upon some fixed and definite scheme, such contracts are not, in my judgment, within such prohibitions. Where, however, the money required to meet such contracts is not provided for, either by being legally ordered to be raised by taxation and appropriated for that purpose, or by some legislative scheme which positively prescribes that it shall be raised by taxation and appropriated for its payment as needed, then such contracts do increase the indebtedness or debt of municipal corporations, within the meaning of such prohibitions. Any other construction would deprive these restrictions of the force requisite to reach and cure the evils intended to be prevented thereby."

In *Sackett* v. *New Albany*, 88 Ind. 473, it was held that where the constitution forbids a municipal corporation from ever becoming indebted beyond a certain amount, that sum may not be exceeded, even for necessary expenses. Niblac, C. J., in delivering the opinion of the court, says : "It was

obviously the intention of the Legislature in submitting, and of the people in adopting, the thirteenth article of the constitution to arbitrarily restrict the power of municipal corporations to contract debts to a limited per centum of their taxable property, and to require, when that limit of indebtedness has been reached, that such corporation shall be prepared to pay for whatever of value they may obtain, without the incurrence of any further indebtedness for any purpose whatever."

Either constitutional or statutory limitations, similar to the one in force here, are found in many other States, and, so far as we are aware, they have been strictly construed, and held to render all contracts made in violation thereof absolutely null and void.   See *Wallace* v. *Mayor*, 29 Cal. 180, (186); *Sutro* v. *Pettit*, 74 Cal. 332 ; *People* v. *May*, 9 Col. 80 ; *Waxahachie* v. *Brown*, 67 Tex. 519 ; *Valparaiso* v. *Gardner*, 97 Ind. 1 ; *Hebard* v. *Ashland County*, 55 Wis. 145 ; *Litchfield* v. *Ballou*, 114 U. S. 190 ; *Lake County* v. *Rollins*, 130 U. S. 662 ; *Beard* v. *City of Hopkinsville*, 23 L. R. A. 402 and note ; *Putnam* v. *Grand Rapids*, 58 Mich. 416 ; *Water Works* v. *Mayor*, 59 *ib.* 311 ; *Fowler* v. *City of Superior*, 85 Wis. 411 ; *Lighting Company* v. *City of Merrell*, 80 *ib.* 358.

And in this connection it is proper to state that, since the passage of the general provision under consideration, many acts have been passed by the General Assembly authorizing the incurring of debts by towns and cities, which debts have been expressly excepted in said acts from the debt limit aforesaid, thus practically putting a legislative construction upon the statute in question to the effect that without such special authority the limit could not be exceeded.   See Pub. Laws R. I. caps. 473, 723, 949, 954, 971, 1102, 1105, 1143. See also the language of Gen. Laws R. I. cap. 36, § 21 ; *Atty Gen.* v. *Providence*, 8 R. I. 8.

The third ground of demurrer is also untenable.   This court has decided over and over again, that persons dealing with a municipal corporation or its officers are bound at their peril to inquire into the power of the municipality or its

agents to make the contract or do the act in question. *Farnsworth* v. *Pawtucket*, 13 R. I. 82 ; *Mathewson* v. *Hawkins, Town Tr.*, 19 R. I. 16.

Every one must take notice of the fact that corporations, like natural persons, are bound only by the acts and contracts of their agents, done and made within the scope of their authority. 2 Kent, 7 ed. 333 and cases cited ; Mechem on Public Officers, §§ 828, 834 and cases cited ; *Goodrich* v. *Waterville*, 88 Me. 39 ; *Turney* v. *Bridgeport*, 55 Conn. 412.

This court has also decided that a municipal corporation, when sued on a contract which it is incapable of making, is not estopped from taking advantage of its incapacity. *Austin* v. *Coggeshall*, 12 R. I. 329, (332). Nor is it in the power of a town council to bind the town by ratifying a contract illegally entered into by the officers or agents of the town, as the power to ratify an act done for and in behalf of another necessarily presupposes in that other the power to do the act himself. "It also presupposes the power in that other to have authorized the doing of the act in the first instance." Mechem, *supra*, §§ 528–9. "It now seems well established law," says Beach, Pub. Corp. § 217, "that where a contract is *ultra vires*,—that is to say, where it is wholly beyond the express or implied powers of the corporation,—it is absolutely void and cannot be ratified by performance or by acceptance of benefit thereunder." See also *Newberry* v. *Fox*, 37 Minn. 141 ; *Davis* v. *Mayor*, 61 Mich. 530.

The demurrer is overruled, and the case remitted to the Common Pleas Division for further proceedings.

*P. Henry Quinn*, for plaintiff.

*James C. Collins & James C. Collins, Jr.*, for defendant.