DECISION
This is a petition for instruction by the duly appointed and qualified receiver of the respondent corporation. She alleges that D.M. Reid Associates, Ltd/MidAtlantic of Wilmington, Delaware (hereinafter simply "Reid") had begun to conduct a sales promotion on the respondent's premises on May 13, 1994. Soon after her appointment as temporary receiver on July 25, 1994, this Court authorized Reid on August 5, 1994 to conduct a liquidation sale of the respondent's inventory in the premises by approving a proposed agreement between Reid and the receiver.
That agreement, entitled Assumption and Modification Agreement, contained the following paragraph 21:
 "21. The Promoter ("Reid") shall deliver to the Receiver during the course of the Promotion, inclusive of sums delivered for deposit in the Secured Party Escrow Account, insurance proceeds, and any and all other sources, net proceeds from the Sale, after payment of the expenses of operation, taxes, Promoter's fees and commissions and all other costs of Sale, but not including fees, commissions or expenses due to the Receiver or her attorneys, which fees, costs premiums and expenses shall be borne by the Receiver, a sum of not less than two hundred thousand dollars ($200,000) free and clear of any claims, whether based upon a secured interest, consignment interest or any other claim or right, of Promoter. The Promoter's obligations under this paragraph 21 are contingent and dependent upon the following:
 * * *
 b. The Promoter be authorized to provide inventory to the Customer for the Promotion in accordance with Consignment and Security Agreement, provided, however, that at no time shall the percentage of inventory actually in stock supplied in accordance with the Consignment and Security Agreement exceed twenty percent (20%) of the total inventory in stock.
 * * *
 d. The Promoter be authorized to liquidate, whether through private sale or public auction, all assets subject to the Receiver's control and located at the Viking II store in Pawtucket, RI.
 * * *
Reid contends that it is not obligated to deliver to the receiver the sum of $200,000 because certain of the contingencies on which its obligation depended have not been satisfied. First, it claims it was prohibited by the receiver from providing inventory for the promotion in accordance with the agreement it had with the respondent before the receivership. Next, it argues that it was not authorized to liquidate all assets subject to the receiver's control and located at the respondent's store in Pawtucket, Rhode Island.
The receiver countered that, in spite of a recently-enacted statutory prohibition against re-stocking the inventory of businesses licensed to conduct "closing out sales" and similar such sales by court officers or persons "acting under the license, direction, or authority of any court," P.L. 1994, ch.206, § 1, she regarded the agreement as in full force and effect. She argues that Reid could not re-stock the inventory at any material time because it would thereby have exceeded the twenty percent limitation applicable to re-stocked inventory. She also contends that the amendment to § 6-14-15 does not apply to sales by receivers, who are not required to be licensed under §§6-14-3 and 6-14-4. In addition, she urges that the merchandise which Reid was not permitted to sell, although located in the store premises, was not under her control because it belonged to Mr. Eugene Weinberg, the owner of the premises, and sale by her or anyone acting for her would have been unlawful.
The resolution of this dispute requires the construction by the Court of the provisions of sub-paragraphs 21.b. and 21.d. of the agreement between the parties. The contingency in sub-paragraph 21.b. is subject to the proviso in its last clause. That proviso says: ". . . at no time shall the percentage of inventory actually in stock supplied in accordance with the Consignment and Security Agreement exceed twenty percent (20%) of the total inventory in stock." The Consignment and Security Agreement was the agreement entered into on May 13, 1994 between Reid and the respondent, Viking II. "Inventory supplied in accordance with" that agreement consisted of furniture added to Viking II's inventory by Reid as a "consignment."
Reid argues that "the total inventory in stock" means the total inventory, including that already supplied by Reid as of August 5, 1994, the time when the Court approved their agreement. Under that construction Reid would be authorized to re-stock the liquidation inventory up to twenty percent of the inventory on the floor at the time of execution of the agreement, irrespective of its source. It says that "stock supplied in accordance with the Consignment and Security Agreement" means only such stock as may have been supplied after the approval of its agreement with the receiver.
The receiver argues that "total inventory" means all of the inventory for sale at any time during the liquidation sale under the receivership. "Stock supplied in accordance with the Consignment and Security Agreement," she says, means stock supplied before as well as after the approval of her agreement with Reid.
In effect, Reid argues it was not authorized to re-stock inventory up to the twenty percent allowance because of the amendment to § 6-15-14, and therefore it was not bound to the obligation to deliver $200,000.00 to the receiver. The receiver says that because approximately fifty percent of the inventory on hand when the liquidation sale began under the agreement, Reid would be prohibited by the terms of the agreement, itself, from re-stocking the total inventory until its share dipped below twenty percent.
The flaw in the receiver's construction becomes apparent in the hypothetical situation where Reid sells its share to less than twenty percent but raises that percentage by the sale of Viking II's share. Put another way, as soon as the agreement was signed, under the receiver's construction, Reid was in default of the proviso, and the only way it could cure that default was to sell inventory it had previously consigned between May 13, 1994 and August 5, 1994 but not any of Viking II's original inventory, until its percentage fell below twenty. The reason for that would be that any sale of "Viking II" inventory would raise not lower "Reid's" share. The receiver would scarcely have desired Reid to sell "its" inventory before it sold "hers."
The Court accepts Reid's construction of the final proviso of sub-paragraph 21.b. of the agreement that, if it was not otherwise barred by law from re-stocking inventory, it could have re-merchandised up to twenty percent of the total inventory as of August 5, 1994.
The receiver argues that the amendment to § 6-14-15 is internally inconsistent, if applied to a court-ordered sale of retail inventory by the statutory receiver of an insolvent corporation. The amendment to § 6-14-15 does appear to apply the limitations of §§ 6-14-9 and 6-14-10 to judicial sales. Sections6-14-9 and 6-14-10, however, forbid the re-stocking of retail inventory at a sale which is carried out pursuant to a license granted under §§ 6-14-3 to 6-14-6. According to the receiver, she is not such a "person" as defined in § 6-14-1, because § 6-14-15, as amended, does not include receivers, or other court officers who conduct liquidation sales on behalf of the court, as persons who are required to comply with §§ 6-14-3 to 6-14-6. She accurately points out that traditionally receivers neither applied for nor obtained the licenses described in §§ 6-14-3 to6-14-6. The receiver's argument, notwithstanding its logical consistency, would render Chapter 206 an absurdity, because the amendment would change nothing. The only reasonable construction of Chapter 206 is that it applies §§ 6-14-9 and 6-14-10 to liquidation sales by receivers, and the others mentioned in the amended § 6-14-15, whether or not they are required to obtain the licenses referred to in those sections.
Accordingly, paragraph 21.b. of the agreement is unlawful and should not have been approved by this Court. Reid and the receiver were mutually mistaken in their belief that the receiver could authorize re-stocking of the inventory.
Paragraph 21 is obviously of the essence of this agreement. Without it the parties would have no agreement. The receiver had no reason to agree to a continuation of the liquidation sale unless she was assured of $200,000 net proceeds. Reid would not produce $200,000 unless it could re-stock inventory up to the twenty percent level. Where the contingency, upon which the agreement depends, fails through no fault of either party the agreement should not be enforced against either party. Cf.City of Warwick v. Boeng Corporation, 472 A.2d 1214, 1219-20 (R.I. 1984) (party's duty to perform under contract excused where underlying purpose of contract is totally and unforeseeably destroyed.)
The Order approving the agreement should be vacated as having been entered pursuant to a mutual mistake. Accordingly, the receiver is instructed that she is not bound by any of the specific provisions of the agreement. Since the Court finds that the entire agreement is invalid, paragraph 29 does not save it from annulment.
The Court has carefully reviewed the evidence regarding the receiver's turn-over of certain items of furniture to Eugene Weinberg and withholding of such furniture from the liquidation sale. Since the Assumption and Modification Agreement must be invalidated as based on a material mutual mistake and is otherwise unlawful, it is immaterial whether or not the contingency in sub-paragraph 21.d. has been satisfied. Nevertheless, the Court is satisfied that the items of furniture to which Mr. Weinberg asserted ownership and control was always his property and never passed into the exclusive possession and control of the receiver.
Under the circumstances the receiver will be instructed to turn over such furniture to Mr. Weinberg and an Order may be entered confirming and ratifying such turn-over as has already been accomplished.
All of the remaining inventory in the possession of Viking II as of July 22, 1994, whether originally obtained by Viking II or delivered pursuant to the Consignment and Security Agreement, shall be deemed to be assets of the insolvent corporation, subject to such lawful liens or claims of security interests which can be established by competent evidence. Inventory, if any, delivered by Reid after July 22, 1994 may be considered as post-petition acquisitions of the receiver, the reasonable value of which may be treated as an administrative expense.
Since the agreement of August 5, 1994 must be totally annulled, the respective interests of the parties in the proceeds remaining in the hands of the receiver must be equitably allocated according to the respective claims of Reid and the receiver. Such equitable allocation may be agreed upon by the parties, subject to approval by the Court, or may be heard and determined by the Court upon application by any party with appropriate notice to all interested parties.
The receiver is instructed to present an Order vacating the Order of August 5, 1994 and annulling the Assumption and Modification Agreement.